UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STACEY KIRKLAND a/k/a ZOSERA STACEY
KIRKLAND,

                    Plaintiff,

    - against -

MANATT, PHELPS and PHILLIPS, LLP; and
KROLL BACKGROUND AMERICA, INC.
d/b/a INFOLINK SCREENING SERVICES,
INC.,

                    Defendants.

08-CV-3371 (DAB) (JCF)

ECF Case

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MANATT, PHELPS AND PHILLIPS'S MOTION TO DISMISS OR STAY THIS ACTION AND COMPEL ARBITRATION

LITTLER MENDELSON, P.C.
885 Third Avenue, 16th Floor
New York, NY 10022.4834
Telephone: 212.583.9600
Facsimile: 212.832.2719

Attorneys for Defendant
Manatt, Phelps & Phillips, LLP

*Of Counsel*:
    David S. Warner
    Diana R. Nance

# TABLE OF CONTENTS

PAGE

I.    PRELIMINARY STATEMENT ................................................................. 1

    A.    Background ................................................................................. 1

II.   STATEMENT OF FACTS ..................................................................... 3

III.  THE FEDERAL ARBITRATION ACT ................................................... 5

IV.   LEGAL ANALYSIS .............................................................................. 6

    B.    The Court Should Dismiss Or Stay This Action And Compel Plaintiff To
        Submit Her Claims To Arbitration In Accordance With Her Agreements ........... 6

        1.    Standard Of Review .......................................................... 6

        2.    Plaintiff's Arbitration Agreements Are Enforceable Under The
            FAA ............................................................................... 7

            a.    Plaintiff Entered Into Two Binding Arbitration Agreements ........ 7

            b.    The Arbitration Agreements Cover This Dispute ......................... 8

            c.    All of Plaintiff's Claims Are Arbitrable ..................................... 12

            d.    Federal Law Favors Arbitration of Plaintiffs' Claims ................. 13

        3.    The Arbitration Agreements Are Also Enforceable Under New
            York Law ........................................................................ 14

        4.    Any Doubts Must Be Resolved in Favor of Arbitration .......................... 15

V.    CONCLUSION ................................................................................... 16

TABLE OF CONTENTS

CASES

*ACE Cap. Re Overseas Ltd. v. Central United Life Ins. Co.*,
    307 F.3d 24 (2d Cir. 2002)..................................................................................... 15

*Ball v. SFX Broad., Inc.*,
    165 F.Supp.2d 230 (N.D.N.Y. 2001)....................................................................... 6

*Cedars-Sinai Med. Ctr. v. Watkins*,
    11 F.3d 1573 (D.C. Cir. 1993), *cert. denied,* 512 U.S. 1235 (1994) ...................... 6

*Circuit City Stores v. Adams*,
    532 U.S. 105 (2001) ......................................................................................... 13, 15

*Collins and Aikman Prods. Co. v. Building Sys., Inc.*,
    8 F.3d 16 (2d Cir. 1995)...................................................................................... 9, 12

*Dean Witter Reynolds Inc. v. Byrd*,
    470 U.S. 213 (1985)................................................................................................ 5

*DeGraziano v. Verizon Comm'ns, Inc.*,
    325 F.Supp.2d 238 (E.D.N.Y. 2004) ................................................................ 12, 13

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)................................................................................................ 7

*Fleet Tire Serv. of North Little Rock v. Oliver Rubber Co.*,
    118 F.3d 619 (8th Cir. 1997) ................................................................................. 9

*Fletcher v. Kidder, Peabody & Co., Inc.*,
    81 N.Y.2d 623, 634 N.Y.S.2d 686 (N.Y.), *cert. denied,* 510 U.S. 993 (1993)..................... 12

*Genesco Inc. v. Kakiuchi & Co.*,
    815 F.2d 840 (2d Cir. 1987)...........................................................................*passim*

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ........................................................................................... 13, 15

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
    507 U.S. 163 (1993)................................................................................................ 6

*Lester v. Basner*,
    676 F. Supp. 481 (S.D.N.Y. 1987) ....................................................................... 14

*Mangini v. Bellevue Maternity Hosp.*,
    01 Civ. 1775, 2002 U.S. Dist. LEXIS 22766 (N.D.N.Y. Sept. 26, 2002) .............. 6

*Manhard v. Merrill, Lynch, Pierce, Fenner & Smith*,
    516 U.S. 811 (1995)............................................................................................. 14

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)................................................................................... 5, 8, 9, 13

*Owen-Williams v. BB&T Investment Servs., Inc.*,
    No. 06-0948 (CKK), 2006 U.S. Dist. LEXIS 52392 (D.D.C. July 31, 2006) ...... 11

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*,
    991 F.2d 42 (2d Cir. 1993)..................................................................................... 7

*Roller v. Centronics Corp.*,
  No. 87 Civ. 5715 (JFK), 1989 U.S. Dist. LEXIS 7317 (S.D.N.Y. June 22,
  1989) ............................................................................................................... 8

*Smith Barney, Harris Upham & Co., v. Luckie*,
  85 N.Y.2d 193, 623 N.Y.S.2d 800 (N.Y. 1995) ...................................... 14

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984) ...................................................................................... 5

*Wilko v. Swan*,
  346 U.S. 427 (1953) .................................................................................. 5

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*,
  215 F.3d 247 (2d Cir. 2000) ..................................................................... 6

## STATUTES

9 U.S.C. § 1 ...................................................................................................... 5
9 U.S.C. § 2 ................................................................................................... 5, 7
9 U.S.C. § 3 ................................................................................................ 8, 13
9 U.S.C. § 4 ...................................................................................................... 13

## RULES

N.Y. CIV. PRAC. L. & R. § 7501 ..................................................................... 14
N.Y. CIV. PRAC. L. & R. § 7502 ..................................................................... 14

Defendant Manatt, Phelps & Phillips, LLP ("MP&P" or "Defendant") submits the following Memorandum of Law in Support of its Motion to Dismiss or Stay this Action and Compel Arbitration.

## I.    PRELIMINARY STATEMENT

In this case, Plaintiff Stacey Kirkland ("Kirkland" or "Plaintiff") agreed to submit the claims she asserts in this action to binding arbitration.  She did so in her signed employment application – in which both she and MP&P agreed to submit any claims to binding arbitration.  She did so again by accepting the terms of MP&P's subsequent offer letter, which also contains a provision requiring that her claims be submitted to binding arbitration.  MP&P recently reminded Plaintiff of her contractual obligation to submit her claims to arbitration, but she has refused to abide by them.  As a result, MP&P requests that the Court dismiss or stay this action and compel Plaintiff to submit her claims to arbitration in accordance with her agreements.

### A.    Background

In March 2007, Plaintiff applied for employment with MP&P as a litigation paralegal in its New York City office.   In her application, Plaintiff authorized MP&P to verify the representations in her application and to conduct a background check.  Plaintiff also agreed to submit to binding arbitration "any issue or dispute arising under or involving any aspect or term of my employment with MP&P or the termination of that employment."

One week later, while working for MP&P on a temporary basis, MP&P gave Plaintiff a written offer of employment.  This offer was expressly contingent upon MP&P's receipt of a satisfactory response to a complete background investigation, which included a criminal history

search.  The offer letter also contains an arbitration clause.[1]

With Plaintiff's written consent, Defendant Infolink Screening Services, Inc. ("Infolink") conducted the background investigation.  Infolink subsequently reported that Plaintiff had been convicted in New York State Supreme Court of resisting arrest and obstructing governmental administration in the second degree, both misdemeanors.  MP&P promptly advised Plaintiff of this information, noting it conflicted with her representation on her application that she had never been convicted of any crimes.  One week later, MP&P revoked its employment offer and ended Plaintiff's temporary assignment.  Although Plaintiff claims she disputed the accuracy of Infolink's report, that report remained unchanged for over one month.  Due to business needs, MP&P was unable to continue holding the position open and filled it with someone else.

Approximately one year later, Plaintiff filed this lawsuit, complaining that her temporary employment was unlawfully terminated and her offer of "permanent employment" was unlawfully revoked based on an inaccurate background check report.  She contends that MP&P and/or Infolink violated the federal Fair Credit Reporting Act, the New York Fair Credit Reporting Act, New York State Corrections Law, the New York State Human Rights Law, and committed various torts.

Plaintiff is precluded from pursuing her claims in court because of her written agreements to submit her claims to binding arbitration.  As these agreements are enforceable and cover all of Plaintiff's claims against MP&P, the Court should dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(1) and/or (6) or, in the alternative, stay these proceedings and order Plaintiff to submit her claims to arbitration.

---

[1] Plaintiff did not return a signed copy of the offer letter but avers that it "reiterated the conditions of the [verbal] offer ... [she] previously accepted."  (*See* Verified Complaint ("Compl.") (copy attached as Exhibit 1 to Defendant's Notice of Motion), ¶ 15.)

## II.    STATEMENT OF FACTS

MP&P is a national law firm, organized as a California limited partnership, with offices in California, New York, and Washington, D.C.[2]  (*See* Compl., ¶ 10 accompanying Declaration of Patricia Sanjuan in Support of Defendant's Motion to Dismiss or Stay the Action and Compel Arbitration ("Sanjuan Decl."), ¶ 1.)

On or about March 16, 2007, Plaintiff accepted a verbal offer of permanent employment as a litigation paralegal in MP&P's New York City office.  (Compl., ¶ 13.)  She was told that the offer was contingent upon completion of a background check.  (*Id.*, ¶ 14.)  Plaintiff was also told she could start work immediately as a temporary employee until the background check was completed.  (*Id.*, ¶ 13.)  Plaintiff began work at MP&P on March 19, 2007.  (*Id.*, ¶ 14.)

That same day, Plaintiff signed an application for employment with MP&P ("Employment Application").  (Sanjuan Decl., ¶ 3.)  The Employment Application contains the following arbitration provision:

> In consideration of my employment, <u>I understand and agree that in the event of any issue or dispute arising under or involving any aspect or term of my employment with MP&P or the termination of that employment</u> (except for claims for worker's compensation, unemployment insurance or any matter within the jurisdiction of the California Labor Commissioner), <u>both MP&P and I agree that the issue shall be submitted to final and binding arbitration</u>, which is explained in more detail in MP&P's Arbitration Agreement which will be included in the new hire package.

(Sanjuan Decl., Ex. 1, p. 6 (MPP0006) (emphasis added).)

Via letter dated March 26, 2007, MP&P confirmed its verbal offer of employment ("Offer Letter").  (*Id.*, ¶ 14.)  The Offer Letter—which "reiterated the conditions of the offer that ... [Plaintiff] previously accepted"— contains another arbitration provision.  (Compl., ¶ 15; *see*

---

[2]  When citing to the Complaint in this memorandum, MP&P assumes the truth of those allegations in it <u>solely</u> for purposes of this motion.

Sanjuan Decl., Ex., 2.)  It states:

> <u>In the event a dispute should arise between us under or in connection with any aspect of this Agreement, including, but not limited to, the performance of or failure to perform any duty or obligation under this Agreement by any Firm partner, employee, or agent, and the validity of this arbitration provision, such dispute shall be resolved by final, binding arbitration</u> in Los Angeles, California in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA").  The terms and procedures applicable to any such arbitration and to the selection of the arbitrator are set forth on Annex A, which is incorporated herein by reference.

(Sanjuan Decl., Ex. 2 p.2 (MPP0008).)

On April 6, 2007, InfoLink provided MP&P with Kirkland's background check report. (Compl., ¶ 16.)  The information in the report conflicted with the information Plaintiff provided in her Employment Application.  (*Compare* Sanjuan Decl., Exh. 1, p.1 (MPP0001) *with* Compl., ¶ 16.)  The report stated that Plaintiff had been convicted of two misdemeanors:  resisting arrest and obstructing governmental administration in the second degree.  (Compl., ¶ 16.)

That same day, MP&P's Human Resources Coordinator, Holly Brown, advised Plaintiff that the background check report showed Plaintiff had been convicted of two misdemeanors in New York County on May 1, 2000.  (Compl., ¶ 18.)  Plaintiff denied that she had been convicted of any misdemeanors.  (*Id.*)

One week later, on April 13, 2007, MP&P advised Plaintiff that it was terminating her temporary assignment and revoking its offer of employment.  (Compl., ¶ 23.)

On April 17, 2007, Plaintiff's counsel began a series of discussions with MP&P and Infolink, requesting that Infolink amend its report.  (*See* Compl., ¶¶ 26-27, 29-32.)

Via letter dated May 3, 2007, MP&P advised Plaintiff's counsel that MP&P had not received any correction from Infolink and that the information contained in its report consequently stands.  (Compl., ¶ 31.)  MP&P further advised that Plaintiff was required to

disclose her convictions on her application but failed to do so. (*Id.*) It added that it filled the position because its business needs prevented it from holding the position open any longer. (*Id.*)

In April 2008, Plaintiff filed this action in contravention of her arbitration agreements.

## III.    THE FEDERAL ARBITRATION ACT

The Federal Arbitration Act ("FAA"), codified at 9 U.S.C. § 1 *et seq.*, "reflects a legislative recognition of 'the desirability of arbitration as an alternative to the complications of litigation.'" *Genesco Inc. v. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987) (quoting *Wilko v. Swan*, 346 U.S. 427, 431 (1953)). The FAA "provides that written provisions to arbitrate controversies in any contract involving commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2). This is "a congressional declaration of a liberal federal policy favoring arbitration agreements...." *Id.* (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). *Accord Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."). In short, "the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Genesco Inc.*, 815 F.2d at 844 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

## IV.    LEGAL ANALYSIS

### B.    The Court Should Dismiss Or Stay This Action And Compel Plaintiff To Submit Her Claims To Arbitration In Accordance With Her Agreements

#### 1.    Standard Of Review

The Court should dismiss this action for lack of subject matter jurisdiction and/or for failure to state a claim pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  Under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations as true, and draw all reasonable inferences in favor of the plaintiff.  *Leatherman v. Tarrant Cty. Narcotics Intel.& Coord. Unit*, 507 U.S. 163, 164 (1993).  A motion to dismiss should be granted when, as here, the plaintiff can neither allege nor prove any set of facts that would entitle her to relief.  *Id.*

Under Rule 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction."  *Ball v. SFX Broad., Inc.*, 165 F.Supp.2d 230, 235 (N.D.N.Y. 2001) (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (D.C. Cir. 1993), *cert. denied,* 512 U.S. 1235 (1994)).  Therefore, "the allegations in the complaint are not controlling ... and only uncontroverted factual allegations are accepted as true."  *Cedars-Sinai Med. Ctr., supra*, 11 F.3d at 1583.  "All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to factfinding by the district court."  *Id.* at 1584.  The Court may consider affidavits and other materials when adjudicating motions to dismiss for lack of subject matter jurisdiction.  *Mangini v. Bellevue Maternity Hosp.*, 01 Civ. 1775, 2002 U.S. Dist. LEXIS 22766, at *4 (N.D.N.Y. Sept. 26, 2002) (copy attached)  (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

Here, the facts conclusively show that Plaintiff is party to two separate and equally enforceable arbitration agreements that deprive the Court of subject matter jurisdiction and

demonstrate her failure to state a claim upon which relief may be granted in this forum.

### 2.    Plaintiff's Arbitration Agreements Are Enforceable Under The FAA

The FAA applies to arbitration agreements "involving commerce." 9 U.S.C. § 2. As MP&P is an out-of-state law firm that services clients across the country from offices in California, New York and Washington, D.C., its activities (and hence Plaintiff's) involve interstate commerce. Thus, Plaintiff's arbitration agreements are covered by the FAA.

When deciding whether to compel arbitration under the FAA, courts must determine: (1) whether the parties agreed to arbitrate; (2) whether the agreement covers the dispute at issue; (3) if federal statutory claims are asserted, did Congress intend those claims to be nonarbitrable; and (4) if some, but not all of the claims are arbitrable, should the Court stay the balance of the proceedings pending arbitration. *Genesco Inc.*, 815 F.2d at 844.

Analysis of these factors demonstrates that this entire case should be dismissed in favor of arbitration. There are two written arbitration agreements between Plaintiff and MP&P, each of which independently covers this dispute. As all of Plaintiff's claims are arbitrable, the Court should compel Plaintiff to submit her claims to arbitration in accordance with these agreements.

### a.    Plaintiff Entered Into Two Binding Arbitration Agreements

Courts should apply ordinary state law contract principles to determine whether the parties agreed to arbitrate their dispute. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). New York law applies in this case because the events surrounding the formation and execution of the arbitration agreement at issue arose here. *See id.* Under New York law, a party is legally bound by his or her signature and is conclusively "'presumed to know its contents and to assent to them.'" *Mildworm v. Ashcroft,* 200 F.Supp.2d 171, 176 (E.D.N.Y. 2002) (quotations omitted; granting motion to compel arbitration and dismissing action). *Accord Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela,* 991 F.2d 42, 46 (2d Cir. 1993).

Plaintiff cannot dispute that she entered into an arbitration agreement with MP&P.  In the Employment Application bearing her signature, Plaintiff agreed "that in the event of any issue or dispute arising under or involving any aspect or term of my employment with MP&P or the termination of that employment ..., both MP&P and I agree that the issue shall be submitted to final and binding arbitration...."  (Sanjuan Decl., Exh. 1 (emphasis added).)    Accordingly, Plaintiff entered into a binding arbitration agreement in her Employment Application.

Plaintiff also entered into the arbitration agreement contained in the Offer Letter.  Even if she did not sign the Offer Letter, Plaintiff admits in her Verified Complaint that she accepted the offer, attesting under oath that the Offer Letter "reiterated the conditions of the offer that ... [she] previously accepted."  (Compl., ¶ 15 (emphasis added).)  As the FAA requires only that the agreement be in writing, not that it be signed, this is sufficient.  *See Genesco*, 815 F.2d at 846 (enforcing arbitration clauses in unsigned sales confirmation forms); *see* 9 U.S.C. § 3.

Moreover, Plaintiff seeks to enforce the terms of the offer by claiming that MP&P unlawfully withdrew it.  As one who seeks to enforce some of the terms of that agreement, Plaintiff must be required to abide by all of them.  *See Roller v. Centronics Corp.*, No. 87 Civ. 5715 (JFK), 1989 U.S. Dist. LEXIS 7317, at *6-7 (S.D.N.Y. June 22, 1989) (finding the plaintiff conceded he was bound by the entire agreement by seeking to enforce certain provisions of it). This includes the arbitration provision.

In sum, there are two equally enforceable arbitration agreements between Plaintiff and MP&P: in the Employment Application and in the Offer Letter.

### b.    The Arbitration Agreements Cover This Dispute

Courts must construe arbitration agreements as broadly as possible in favor of arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Genesco Inc.*, 815 F.2d at 847 ("arbitration should be ordered unless it may be said with positive assurance that

the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" (internal quotations omitted)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25.[3]

Broadly drafted clauses, like the one in this case, render the plaintiff's claims "presumptively arbitrable." *See Collins and Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (finding that "any claim or controversy arising out of or relating to the agreement," is broad and, thus, presumptively arbitrable). In the face of such broad clauses, arbitration of even collateral matters should be ordered if the claim alleged "implicates issues of contract construction or the parties' rights and obligations under it." *Id.* at 23.

Here, both of the arbitration agreements are broad and cover all of Plaintiff's claims. The one in the Employment Application applies to "<u>any issue or dispute arising under or involving any aspect or term of my employment with MP&P</u> or the termination of that employment." (Sanjuan Decl., Exh. 1 (emphasis added).) The one in the Offer Letter states:

> <u>In the event a dispute should arise between us under or in connection with any aspect of this Agreement, including, but not limited to,</u> the performance of or failure to perform any duty or obligation under this Agreement by any Firm partner, employee, or agent, and <u>the validity of this arbitration provision, such dispute shall be resolved by final, binding arbitration</u>....

(Sanjuan Decl., Exh. 2 (emphasis added).) Given the breadth of these arbitration clauses, Plaintiff's claims in this case are presumptively arbitrable.

When determining whether a claim falls within the scope of the arbitration agreement, courts should "focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco*, 815 F.2d at 846. If the allegations supporting those claims "touch

---

[3] Indeed, "[w]here a broad arbitration clause is in effect, even the question of whether the controversy relates to the agreement containing the clause is subject to arbitration." *Fleet Tire Serv. of North Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997).

matters" covered by the arbitration agreement, "then those claims must be arbitrated, whatever the legal labels attached to them." *Id.*

It is evident from the Complaint that Plaintiff's allegations "touch matters" covered by these arbitration agreements. Plaintiff essentially complains about MP&P's termination of her temporary employment and revocation of its employment offer. Such claims surely arise under or involve an aspect or term of employment. Indeed, they encompass the very basis on which the employment relationship is created. Moreover, Plaintiff admits her employment with MP&P was contingent upon satisfactory results of a background check, which included her criminal history. (*See* Complaint, ¶¶ 13, 15. *See also* Sanjuan Decl., Exh. 2.) Further, just above the arbitration clause in the Employment Application, Plaintiff:

- Affirmed the truth of her representations in the Employment Application and authorized MP&P to check their accuracy.[4]

- Affirmed her understanding that MP&P would conduct a background check; and

- Acknowledged that any false or misleading information in her application "may constitute grounds for revocation of offer, refusal to hire or termination of my employment at any time."

(Sanjuan Decl., Ex. 1 (p. 6 (MPP0006).)

This dispute likewise arises "under or in connection with" an aspect of the Offer Letter itself, particularly the aspect in which the offer was made expressly contingent upon MP&P's receipt of a satisfactory response to a complete background investigation, which included a criminal history search. (*See* Sanjuan Decl., Ex. 2, p. 2 (MPP0008) ("In the event a dispute should arise between us under or in connection with any aspect of this Agreement, including, but not limited to, ... the validity of this arbitration provision, such dispute shall be resolved by final,

---

[4] Indeed, Plaintiff even "release[d] MP&P ... from any and all claims, demands, or liabilities that may result from such inquiry or disclosure of information to MP&P ... which may result in my failure to receive an offer or, if I am hired, in my termination of employment." (Sanjuan Dec., Exh. 1, p.6 (MPP0006).)

binding arbitration....").

As Plaintiff's allegations plainly "touch matters" covered by the arbitration agreements in both the Employment Application and Offer Letter, the Court should dismiss or stay this action and compel Plaintiff to submit her claims to arbitration.

Courts have enforced arbitration agreements in similar circumstances. *See, e.g., Owen-Williams v. BB&T Investment Servs., Inc.*, No. 06-0948 (CKK), 2006 U.S. Dist. LEXIS 52392 (D.D.C. July 31, 2006). In *Owen-Williams*, the court enforced an arbitration agreement between the plaintiff and his prospective employer in an action arising from the employer's revocation of its employment offer based on the results of the plaintiff's background check. *Id.* at *34-35. Although the plaintiff asserted the revocation was in breach of contract, the court noted that the plaintiff sought, in the alternative, damages for detrimentally relying on the defendant's offer. Although Plaintiff does not assert the same legal claims here, her factual allegations are sufficiently similar and equally "touch matters" covered by the arbitration agreements.

In addition, Plaintiff's legal claims "touch matters" covered by the arbitration agreements. In her first cause of action, Plaintiff accuses MP&P of taking "adverse action" against her by "terminating Plaintiff's temporary job and revoking Manatt's offer of permanent employment...." (Compl., ¶ 34.) In her second cause of action, Plaintiff alleges that "Manatt's decision to terminate Plaintiff's temporary job and to withdraw its offer of employment was made in violation of [N.Y.] Corr. [Law] § 752." (Compl., ¶ 38.) In her third cause of action, Plaintiff alleges that MP&P violated the New York State Human Rights Law "by taking adverse action against Plaintiff in reliance on her conviction for the petty offense of disorderly conduct and" allegedly inquiring about a conviction that was supposed to be sealed. (Compl., ¶¶ 40-42.) In her last two causes of action against MP&P, Plaintiff alleges that it tortiously "rescinded its

offer of permanent employment to Plaintiff and terminated her temporary employment...."
(Compl., ¶¶ 44, 47.)[5]  Plaintiff goes on to claim that she suffered "loss of employment, loss of
pension and health care benefits, [and] loss of past and future professional opportunities" among
other purported damages.  (Compl., ¶ 63.)  She then asks the Court to direct "Defendants to make
Plaintiff whole for all earnings she would have received but for Defendants' defamatory and
other wrongful acts, including, but not limited to, future and past lost wages, lost salary
increases, pension benefits, insurance and lost professional opportunities."  (Complaint, ¶ Prayer
for Relief, ¶ g.)

In sum, it is evident from Plaintiff's claims and demands that this dispute arises under or
involves the aspects or terms of her employment with MP&P as well as "under or in connection
with an[] aspect of" MP&P's employment offer.  Therefore, Plaintiff's claims are covered by the
broad arbitration agreements in both the Employment Application and the Offer Letter.

### c.    All of Plaintiff's Claims Are Arbitrable

Plaintiff asserts claims against MP&P under the Fair Credit Reporting Act ("FCRA"), the
New York State Human Rights Law ("NYSHRL"), the New York Corrections Law and New
York tort law.  There is no legislative impediment to submitting these claims to arbitration.  *See
DeGraziano v. Verizon Comm'ns, Inc.*, 325 F.Supp.2d 238, 245 (E.D.N.Y. 2004) (granting the
defendant's motion to compel arbitration of the plaintiff's FCRA claims under a pre-dispute
agreement); *Fletcher v. Kidder, Peabody & Co., Inc.*, 81 N.Y.2d 623, 635, 601, 634 N.Y.S.2d
686 (N.Y.), *cert. denied*, 510 U.S. 993 (1993) (enforcing a pre-dispute agreement to arbitrate
NYSHRL claims, noting "the burden is on the party seeking to avoid arbitration of a statutory
claim to show that Congress specifically intended to preclude waivers of the right to a judicial
remedy for such claims"); *Collins & Aikman Prods. Co.* 58 F.3d at 23 ("The mere fact that this is

---

[5]    Plaintiff labels her fourth and fifth causes of action as willful and negligent reliance on false
information, claims that do not appear cognizable under New York law.

a tort claim, rather than one for breach of the Contracts, does not make the claim any less arbitrable.").

### d.    Federal Law Favors Arbitration of Plaintiffs' Claims

The FAA was originally enacted in 1925 to reverse the "longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). *See also Circuit City Stores v. Adams*, 532 U.S. 105 (2001). In *Circuit City*, the Supreme Court noted the significant benefits of arbitrating claims in the employment context. *Id.* at 122-23.

In addition to its "enforceability of arbitration agreements" provision, the FAA also provides for a stay of proceedings in district courts when an issue in the proceedings is referable to arbitration. 9 U.S.C. § 3. Where some, but not all, of a plaintiff's claims are arbitrable, a stay of judicial proceedings pending arbitration is appropriate. However, where, as here, <u>all</u> of Plaintiffs' claims are arbitrable, a stay is not necessary, and the legal action should be dismissed. *See, e.g., Mildworm*, 200 F.Supp.2d at 180. Additionally, the FAA provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. § 4. "These provisions manifest a 'liberal federal policy favoring arbitration agreements.'" *Gilmer*, 500 U.S. at 25 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24). *See also DeGraziano*, 325 F.Supp.2d at 243. Accordingly, the Court should dismiss Plaintiff's claims pursuant to the FAA and compel her to submit them to arbitration in accordance with the terms set forth in Annex A of the Offer Letter. Alternatively, the Court should stay the proceedings pending arbitration.

### 3.    The Arbitration Agreements Are Also Enforceable Under New York Law

"In New York, the existence of a valid arbitration agreement is governed by N.Y. CIV.

PRAC. L. & R. § 7501 (McKinney 1980), which requires only that the arbitration agreement be in

writing, not that it be signed by the parties to the agreement." *Lester v. Basner*, 676 F. Supp.

481, 483 (S.D.N.Y. 1987).   Section 7501 states, in pertinent part:  "A written agreement to

submit any controversy thereafter arising or any existing controversy to arbitration is enforceable

without regard to the justiciable character of the controversy and confers jurisdiction on the

courts ... to enforce it and to enter judgment on an award."  N.Y. CIV. PRAC. L. & R. § 7501

(McKinney's 1998).  A party aggrieved by the failure of another to arbitrate may apply for an

order compelling arbitration. *Id.*, § 7503(a). "Where there is no substantial question whether a

valid agreement was made or complied with, and the claim sought to be arbitrated is not barred

by limitation under subdivision (b) of section 7502, the court shall direct the parties to arbitrate."

*Id.*[6]

When adjudicating a motion to compel arbitration based on the parties' prior agreement,

New York law permits the Court to address the following questions, to the extent applicable:  (1)

whether the parties made a valid agreement to arbitrate; (2) if so, whether the agreement has

been complied with; and (3) whether the claim sought to be arbitrated would be time-barred if

asserted in court. *See Smith Barney, Harris Upham & Co., v. Luckie*, 85 N.Y.2d 193, 623

N.Y.S.2d 800, 805 (N.Y.), *cert. denied sub nom. Manhard v. Merrill, Lynch, Pierce, Fenner &

Smith*, 516 U.S. 811 (1995).

In this case, there can be no dispute that Plaintiff signed her Employment Application.

---

[6]  Section 7502(b) states: "If, at the time that a demand for arbitration was made or a notice of intention to arbitrate was served, the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration...." N.Y. CIV. PRAC. L. & R. § 7502(b) (McKinney's Supp. 2008).

As the Employment Application contains an arbitration clause, Plaintiff has accordingly assented to it. For the reasons discussed above, Plaintiff accepted the terms of the Offer Letter, too, which also included an arbitration agreement. By filing and insisting on maintaining this action, Plaintiff has not complied with either of those agreements.

### 4.    Any Doubts Must Be Resolved in Favor of Arbitration

As the Supreme Court declared in *Gilmer*, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." 500 U.S. at 25. The Second Circuit has repeatedly recognized this policy and applied a liberal presumption in favor of arbitrability. *See, e.g., ACE Cap. Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir. 2002); *Genesco*, 815 F.2d at 844. The Supreme Court reaffirmed its commitment to arbitration in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001), in which it held that the FAA applies to employment agreements. *Circuit City*, 532 U.S. at 119. That decision constitutes a ringing endorsement of the arbitration process by our nation's highest court and reaffirms that the FAA compels judicial enforcement of otherwise valid arbitration agreements. *Id.* at 122-23 (noting that "there are real benefits to the enforcement of arbitration provisions" and that the Court has "been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context"). Accordingly, the Court should resolve any doubts about the enforceability of the arbitration agreements in favor of arbitration.

## V.    CONCLUSION

For all the foregoing reasons, Defendant respectfully requests an order dismissing the Complaint or staying this action and compelling Plaintiff to submit her claims to arbitration in accordance with her agreements.  Defendant also respectfully requests that the Court award it reasonable attorneys' fees and costs for Plaintiff's refusal to abide by her arbitration agreements.

Respectfully submitted,

Dated: June 23, 2008
     New York, New York

                                             /s/
                              David S. Warner (DW-4576)
                              Diana R. Nance (DN-5823)
                              LITTLER MENDELSON, P.C.
                              885 Third Avenue, 16th Floor
                              New York, NY  10022.4834
                              Telephone:  212.583.9600
                              Facsimile: 212.832.2719
                              Email: dwarner@littler.com
                                             dnance@littler.com
                              Attorneys for Defendant
                              Manatt, Phelps & Phillips, LLP

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 22766-2

Case 1:06-cv-03874-JDA Document 76-2    Filed 06/23/2008    Page 1 of 6 Page 1 of 6

**LexisNexis®** *Total Research System*

Switch Client | Preferences | Sign Out | ? Help

Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Sele

Service: **Get by LEXSEE®**
Citation: **2002 U.S. Dist. LEXIS 22766**

*2002 U.S. Dist. LEXIS 22766, \**

MICHAEL A. MANGINI, Plaintiff, vs BELLEVUE MATERNITY HOSPITAL, INC.; BELLEVUE WOMAN'S MEDICAL CENTER, INC.; GRACE G. JORGENSEN, M.D., INDIVIDUALLY, AND/ OR IN HER OFFICIAL CAPACITIES AND AS AIDER AND ABETTOR, Defendants.

01-CV-1775

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK

2002 U.S. Dist. LEXIS 22766

September 26, 2002, Decided

**DISPOSITION: [\*1]** Plaintiff's complaint was dismissed for lack of subject matter jurisdiction. Motion for summary judgment by defendants, Bellevue Maternity Hospital, Inc., Bellevue Woman's Medical Center, Inc., and Grace G. Jorgensen, M.D. was granted; Cross-motion for discovery by plaintiff was denied; Title VII claim was dismissed with prejudice; NYSHRL claim was dismissed without prejudice; and Complaint was dismissed in its entirety. Judgment was entered.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff former employer brought suit against defendants, a hospital and a physician, for violating Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. §§ 2000e et seq. and for violating the New York State Human Rights Law (NYSHRL). Defendants moved to dismiss the employee's complaint pursuant to Fed. R. Civ. P. 12(b)(1). The employee opposed and cross-moved for discovery pursuant to Fed. R. Civ. P. 34, 37(a)(12).

**OVERVIEW:** The employee, a male, alleged that defendants discriminated against him during his employment as CEO and CFO for the hospital based upon the fact that he was a male. The court found that the employee's affidavit did not dispute that the hospital only provided health care in the state of New York. Even assuming that all information in the employee's affidavit with respect to his knowledge of the hospital's interstate contacts was true, he failed to meet his burden of showing by a preponderance of the evidence that jurisdiction existed. The hospital was a small, intrastate, not-for-profit business and did not meet the 42 U.S.C.S. § 2000e(b) definition of "employer." While it may have had some contacts with interstate commerce, they were too few and too little to create an impact on the free flow of commerce. Accordingly, the employee's federal claims are dismissed for lack of subject matter jurisdiction. The employee, as former CEO and CFO of the hospital, had more than sufficient knowledge of the hospital's contacts with interstate commerce. Therefore, discovery into this matter was unnecessary.

**OUTCOME:** Defendants' motion for summary judgment was granted. The employee's motion for discovery was denied and his claims were dismissed.

**CORE TERMS:** commerce, subject matter jurisdiction, discovery, woman, interstate commerce, interstate, de minimus, intrastate, cross-motion, patients, Civil Rights Act, industry affecting

commerce, discriminatory, preponderance, supplemental, violating, oppose, movant, buses, termination

## LEXISNEXIS® HEADNOTES                                             − **Hide**

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview
Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss

*HN1* If challenged, a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. When a defendant moves to dismiss a cause of action pursuant to Fed. R. Civ. P. 12(b)(1), the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction. For purposes of such a motion, the allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true. All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court. On such a motion, both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose such motions.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions
Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Coverage & Definitions > Employers
Transportation Law > Interstate Commerce > Definition of Commerce

*HN2* Title VII of the 1964 Civil Rights Act, 42 U.S.C.S. §§ 2000e, et seq. prohibits employers from engaging in discriminatory employment practices. 42 U.S.C.S. § 2000e(b) provides that only an "employer," defined as one who is engaged in an industry affecting commerce who has 15 or more employees, may be held liable under Title VII. "Industry affecting commerce" means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce. 42 U.S.C.S. § 2000e(h). The term "commerce" means trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof. 42 U.S.C.S. § 2000e(g).  More Like This Headnote | *Shepardize:* Restrict By Headnote

Constitutional Law > Congressional Duties & Powers > Commerce Clause > General Overview
*HN3* Intrastate activities that effect interstate commerce may be regulated by Congress.  More Like This Headnote

**COUNSEL:** MICHAEL E. BASILE, ESQ., HIGGINS, ROBERTS, BEYERL & COAN, P.C., Schenectady, New York, for Plaintiff.

SHERI L. MORENO, ESQ., HEATHER P. BEHNKE, ESQ., NIXON PEABODY LLP, Albany, New York, for Defendants.

**JUDGES:** DAVID N. HURD, United States District Judge.

**OPINION BY:** DAVID N. HURD

### OPINION

### *MEMORANDUM-DECISION AND ORDER*

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 32766

Case 1:01-cv-00341-LBS Document 74-2    Filed 06/23/2008    Page 3 of 6

Page 3 of 6

## I. INTRODUCTION

Plaintiff Michael Mangini ("Mangini" or "plaintiff") sues defendants, Bellevue Maternity Hospital, Inc., doing business as Bellevue Woman's Medical Center, Inc. ("Bellevue"), and Grace Jorgensen, M.D. ("Dr. Jorgensen"), (collectively, "defendants"), for violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq. ("Title VII"), and for violating the New York State Human Rights Law ("NYSHRL").

 **[\*2]** The defendants move to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiff opposes and cross-moves for discovery pursuant to Fed. R. Civ. P. 34, 37(a)(1 to 2). Oral argument was heard in Albany, New York on April 26, 2002. Decision was reserved.

## II. FACTS

Bellevue is a health facility that provides medical services exclusively to women. Plaintiff, a male, was hired by Bellevue in 1980 as Chief Financial Officer and was promoted to Chief Executive Officer ("CEO") in 1984. Plaintiff remained the CEO until April 27, 2001 when he was informed of his termination by Dr. Grace Jorgensen. Shortly before his termination, Mangini was directed by Dr. Jorgensen to report to a woman, Anne Saile ("Saile"). Ms. Saile had been appointed to a newly created position of Executive Vice President. Mr. Mangini's interim replacement as CEO for the period of May through June of 2001 was a woman and his announced successor as acting CEO was also a woman.

Dr. Jorgensen is a woman, the former President of the Board of Directors, former Chairperson of the Board of Directors of Bellevue, and was a majority shareholder. She held those positions at varying times during plaintiff's **[\*3]** employment. While working for Bellevue, plaintiff claims that Dr. Jorgensen made various discriminatory comments against men.

Plaintiff filed his charge in this case with the Equal Employment Opportunity Commission ("EEOC") on May 22, 2000. He was then issued a notice of dismissal and right-to-sue letter ninety-seven days later on August 27, 2001.

## III. DISCUSSION

### A. 12(b)(1) Motion to Dismiss Standard

HN1 If challenged, a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. See Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002), Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996). When a defendant moves to dismiss a cause of action pursuant to Fed. R. Civ. P. 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." Cedars-Sinai Medical Center v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993). For purposes of such a motion, "the allegations in the complaint are not controlling … and only uncontroverted factual allegations are accepted as true." Id. "All other facts underlying the controverted **[\*4]** jurisdictional allegations are in dispute and are subject to fact-finding by the district court." Id. at 1584. On such a motion, both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose such motions. Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

### B. Subject Matter Jurisdiction

HN2 Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e, et seq. prohibits employers from engaging in discriminatory employment practices. 42 U.S.C. § 2000e(b) provides that only an "employer," defined as one who is "engaged in an industry affecting commerce who has fifteen or more employees," may be held liable under Title VII. "Industry affecting commerce" means "any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce." 42 U.S.C. § 2000e(h). The term "commerce" means

"trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside **[\*5]** thereof ..." *Id.* at (g). Bellevue argues that it does not meet Title VII's definition of "employer" because it is not engaged in an industry affecting commerce. It is the plaintiff's burden to show that Bellevue has more than a de minimus impact on the free flow of commerce. *See Luckett,* 290 F.3d at 497.

The plaintiff cites to *Rodriguez v. Beechmont Bus Service, Inc.,* 173 F. Supp. 2d 139, 147 (S.D.N.Y. 2001) for the proposition that an intrastate business can impact interstate commerce. While that proposition is correct, the facts of *Rodriguez* are distinguishable from the instant case. *See United States v. Morrison,* 529 U.S. 598, 609, 146 L. Ed. 2d 658, 120 S. Ct. 1740 (2000) (stating that **HN3** intrastate activities that effect interstate commerce may be regulated by Congress). In *Rodriguez,* the defendant was a bus company that purchased its buses, parts and fuel in interstate commerce. *Rodriguez,* 173 F. Supp. 2d at 147. Additionally, those buses used the same roads as other vehicles traveling interstate. *Id.* The court held in *Rodriguez* that the defendant had more than a de minimus impact on commerce. **[\*6]** *Id.*

In this case, the plaintiff was the former CEO and CFO of Bellevue. (*See* Mangini Aff. P 3.) He held those positions for over twenty years. As a result, plaintiff has sufficient knowledge of the defendants' contacts with interstate commerce. For purposes of this motion, plaintiff's affidavit will be taken as true. Discovery will not improve the plaintiff's position on this issue.

Plaintiff's affidavit does not dispute that Bellevue has no office, owns no property, and provides no services outside of New York State. Bellevue has a small 40-bed hospital in Niskayuna, New York, a urinary clinic in Colonie, New York and a physicians office in Guilderland, New York. (Yowell Aff. P 2. ¹) Further, plaintiff's affidavit does not dispute that Bellevue only provides health care in the State of New York. (*See generally,* Mangini Aff. PP 8, 9, 11.) As proof of defendants' interstate contacts, Mangini offers the following examples. He states that some of Bellevue's lab and other equipment came from outside of New York. (*Id.* at P 11.) Mangini also states that a few employees may have second homes in other states or occasionally travel to other states for business relating to **[\*7]** the hospital. (Mangini Aff. PP 12, 13, 14, 15.) However, with the exception of those few, all the employees of Bellevue are residents of the State of New York. Additionally, he claims that some of Bellevue's patients come from Vermont, Maine or Massachusetts. (Mangini Aff. P 9.) However, these patients are in the distinct minority, the vast majority of the hospital's patients are from New York State. (*See generally, id.*) Even assuming that these examples and all the other information in plaintiff's affidavit with respect to his knowledge of Bellevue's interstate contacts is still true today, he has failed to meet his burden of showing by a preponderance of the evidence that jurisdiction exists.

**FOOTNOTES**

**1** Allison Yowell is Bellevue's current Chief Financial Officer.

Bellevue is a small, intrastate, not-for-profit business. While it may have some contacts with interstate commerce, they are too few and too little to create an impact on the free flow of commerce. Accordingly, plaintiff's federal claims are dismissed **[\*8]** for lack of subject matter jurisdiction. *See Johnson v. Alternatives, Inc.,* 2002 U.S. Dist. LEXIS 15667 (N.D.Ill. Aug. 22, 2002) (declining subject matter jurisdiction over claims because defendant had only a de minimus impact on the flow of commerce).

In view of the above, the remaining arguments of the defendants need not be considered.

**C. *Cross-Motion for Discovery***

The plaintiff, as former CEO and CFO of Bellevue, has more than sufficient knowledge of Bellevue's

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 22766

Case 1:00-cv-03974-DAB Document 74-2    Filed 06/23/2008    Page 5 of 6 Page 5 of 6

contacts with interstate commerce. Therefore, discovery into this matter is unnecessary.

**D. *Supplemental Jurisdiction***

Pursuant to 28 U.S.C. §§ 1367(c)(3), supplemental jurisdiction over plaintiff's pendent state law claims will not be exercised.

**IV. *CONCLUSION***

Plaintiff's complaint must be dismissed for lack of subject matter jurisdiction. Additionally, plaintiff's cross-motion for discovery is denied.

Accordingly, it is

ORDERED that

1. The motion for summary judgment by defendants, Bellevue Maternity Hospital, Inc., Bellevue Woman's Medical Center, Inc., and Grace G. Jorgensen, M.D. is GRANTED;

2. The cross-motion for discovery by plaintiff **[*9]** Michael Mangini is DENIED;

3. The Title VII claim is DISMISSED with prejudice;

4. The NYSHRL claim is DISMISSED without prejudice; and

5. The complaint is DISMISSED in its entirety.

The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

s/David N. Hurd

United States District Judge

Dated: September 26, 2002

Service:  **Get by LEXSEE®**
Citation:  **2002 U.S. Dist. LEXIS 22766**
View:  Full
Date/Time:  Monday, June 23, 2008 - 3:15 PM EDT

* Signal Legend:
● -  Warning: Negative treatment is indicated
Ⓠ -  Questioned: Validity questioned by citing refs
⚠ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
Ⓐ -  Citing Refs. With Analysis Available
Ⓘ -  Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 22766

Case 1:08-cv-05971-DAB   Document 14-2   Filed 06/23/2008   Page 6 of 6   Page 6 of 6

Selector

History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Out | Help



About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Get a Document - by Citation - 1989 U.S. Dist. LEXIS 7317-3    Page 1 of 5

Case 1:08-cv-05371-DAB    Document 74-3    Filed 06/23/2008    Page 1 of 5

**LexisNexis®** *Total Research System*

Switch Client ┊ Preferences ┊ Sign Out ┊ ? Help

Search ╲ Research Tasks ╲ Get a Document ╲ *Shepard's®* ╲ Alerts ╲ Total Litigator ╲ Transactional Advisor ╲ Counsel Sele

Service: **Get by LEXSEE®**
Citation: **1989 U.S. Dist. LEXIS 7317**

*1989 U.S. Dist. LEXIS 7317, \**

JOHN ROLLER, Plaintiff, v. CENTRONICS CORPORATION, Defendant

No. 87 Civ. 5715 (JFK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1989 U.S. Dist. LEXIS 7317

June 22, 1989, Decided

## CASE SUMMARY

**PROCEDURAL POSTURE:** With regard to plaintiff former employee's claims for breach of an employment agreement and promissory estoppel in his diversity action against defendant employer, the employer filed a motion pursuant to 9 U.S.C.S. §§ 3 and 4 to stay the action and compel arbitration.

**OVERVIEW:** The employer offered the employee a vice-president position. The employee received a copy of the employer's standard employment agreement with a letter from the employer. In a subsequent letter, the employee received an outline of the employer's offer to him. The employee never signed the standard agreement, but he signed and returned the outline. The standard agreement set out benefits accorded to executives and contained an arbitration clause. Arguing that he was terminated without cause, the employee sought enforcement of the severance benefits set out in the standard agreement. The employer argued that if the employee was entitled to the severance benefits set out in the standard agreement, then he also was bound by the arbitration provision therein. The employee argued that he could be bound by certain provisions in the unsigned standard agreement but not by others. The court rejected the employee's contention as contrary to fairness and common sense. The employee had unequivocally recognized his intent to be bound by the standard agreement by suing thereunder, and the dispute over whether he had been terminated with cause was plainly arbitrable under the standard agreement.

**OUTCOME:** The court granted the employer's motion as to both claims.

**CORE TERMS:** arbitration, compel arbitration, arbitration clause, severance, employment agreement, arbitration agreement, terminated, vice-president, outline, agreement to arbitrate, arbitrate, concede, letter dated, good cause, arbitrators

## LEXISNEXIS® HEADNOTES                                           ⊟**Hide**

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > General Overview ◄
International Trade Law > Dispute Resolution > Arbitration ◄

Get a Document - by Citation - 1989 U.S. Dist. LEXIS 73174-3

Case 1:08-cv-03391-DAB Document 74-3 Filed 06/23/2008 Page 2 of 5 Page 2 of 5

**HN1** ⤓ See 9 U.S.C.S. § 3.

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > General Overview 🗺
International Trade Law > Dispute Resolution > Arbitration 🗺
**HN2** ⤓ An Act (federal) states that upon refusal or failure of a party to arbitrate, the court may make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. 9 U.S.C.S. § 4. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Arbitrability 🗺
Civil Procedure > Alternative Dispute Resolution > Arbitrations > Mandatory ADR 🗺
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses 🗺
**HN3** ⤓ A motion to compel arbitration requires (1) determining whether an agreement to arbitrate exists; (2) whether an arbitrable claim is at issue and (3) whether there has been a waiver of the right to arbitration. 9 U.S.C.S. § 3. The party seeking to compel arbitration bears the burden of showing that the arbitration agreement exists and a stay is warranted. This burden may be satisfied by the actual production of the arbitration agreement or by showing it was a regular practice of defendant to enter into these agreements. Fed. R. Evid. 406. When the party seeking to compel arbitration meets the initial requirement, the burden of proof shifts to the plaintiff to show a "substantial issue" concerning the presence of an agreement to arbitrate. More Like This Headnote |
*Shepardize: Restrict By Headnote*

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > General Overview 🗺
Civil Procedure > Alternative Dispute Resolution > Arbitrations > Waivers 🗺
Civil Procedure > Alternative Dispute Resolution > Arbitrations > Mandatory ADR 🗺
**HN4** ⤓ A delay in seeking arbitration does not constitute waiver of the right of arbitration, absent a showing of substantial prejudice by the party alleging waiver. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > General Overview 🗺
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses 🗺
Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Enforcement 🗺
**HN5** ⤓ A written provision is the indispensable requisite of an enforceable arbitration agreement. A party need not sign an arbitration agreement to be bound if he commits himself to it by actions or conduct. Because arbitration clauses are governed by ordinary contract principles, numerous kinds of conduct may evince an intent to be bound by the arbitration clause. For example, a party may seek to enforce rights derived from other provisions of the agreement and thereby concede an intent to be bound by the entire agreement. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements 🗺
Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation 🗺
Contracts Law > Breach > Causes of Action > General Overview 🗺
**HN6** ⤓ While the Federal Rules of Civil Procedure countenance inconsistent and alternative pleading, Fed. R. Civ. P. 8(e)(2), they surely do not sanction the adoption of some terms of an agreement a party seeks to enforce and the jettison of others. More Like This Headnote

**COUNSEL:** [*1] For Plaintiff: Golenbock, Eiseman, Assor, Bell & Perlmutter, New York, New York, Of counsel: Jeffrey T. Golenbock, Esq.

For Defendant: John R. Bartels, Jr. Esq., White Plains, New York.

**OPINION BY:** KEENAN

**OPINION**

OPINION and ORDER

JOHN F. KEENAN, UNITED STATES DISTRICT JUDGE

*BACKGROUND*

*Counts I and III of the complaint in this diversity action allege breach of an employment agreement and promissory estoppel, respectively. This Court previously dismissed Count II of the complaint pursuant to FRCP 12(b)(6). Defendant now moves pursuant to Title 9 U.S.C. §§ 3 and 4 to stay this action and compel arbitration of the claims raised in Counts I and III of the complaint. For the reasons stated below, defendant's motion is granted.*

*STATEMENT OF FACTS*

*Defendant Centronics is a Delaware corporation with its principal place of business in Nashua, New Hampshire. In 1986, defendant sought to establish a presence in New York. To this end, defendant offered the plaintiff, John Roller, the position of vice-president of Corporate Development, requiring that he work in New York. At that time, plaintiff resided and worked in Houston, Texas.*

*Plaintiff alleges that during negotiations with Centronics, he was* **[*2]** *offered the position of vice-president in accordance with the provisions of the standard Centronics employment agreement for vice-presidents (the "Standard Agreement"). Centronics' Standard Agreement set out benefits accorded to executives, as well as an arbitration clause and a non-competition clause. The benefits included, among other things, health insurance, a company car, and severance benefits. Plaintiff received a copy of the Standard Agreement with a letter dated July 9, 1986. The letter indicated that a detailed offer of employment would follow, and did not request Mr. Roller to sign or return the enclosed Standard Agreement. In a letter dated August 15, 1986, plaintiff received an "outline" of Centronics' offer to him and benefits he would receive. The letter also indicated that Mr. Roller was to accept the "offer" no later than August 25, 1986. Plaintiff signed the outline, accepting the "offer," and returned it by the required date. The outline made no reference to severance benefits or the arbitration clause. Plaintiff commenced working at Centronics on September 1, 1986.*

*On July 2, 1987, Centronics closed its New York office and terminated plaintiff's position. Plaintiff* **[*3]** *commenced this action August, 1987, alleging a breach of his employment agreement. Plaintiff contends he was terminated without cause and now seeks enforcement of the severance benefits provided for in the Standard Agreement. Centronics argues that no written employment agreement binding Mr. Roller and Centronics ever existed because Mr. Roller never signed the Standard Agreement, but concedes its existence for purposes of this motion. Additionally, Centronics maintains that Mr. Roller was terminated with good cause.*

*The Standard Agreement, which plaintiff asserts is the source of his right to severance benefits, provides that:*

*"Any disputes arising as to whether a termination of executive's employment was with good cause will be settled by the final decision of a panel of arbitrators to be selected under the rules of the American Arbitration Association."*

*(Stein Aff., Ex. "A" at para. 7). Defendant contends that if plaintiff is entitled to the benefits which are set out in the Standard Agreement, namely the severance benefits, then he must also be bound by the provision providing for arbitration. On the contrary, plaintiff urges that he can be bound by*

Get a Document - by Citation - 1989 U.S. Dist. LEXIS 7117

Case 1:04-cv-03371-DAB   Document 174-3   Filed 06/23/2008   Page 4 of 5   Page 4 of 5

certain provisions in an **[*4]** unsigned document, and not by others.

DISCUSSION

9 U.S.C. § 3 provides in relevant part that:

HN1 "In any suit . . . brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court shall stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."

9 U.S.C. § 3. In addition, HN2 the Act states that upon refusal or failure of a party to arbitrate, the Court may make an "order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

HN3 A motion to compel arbitration requires (1) determining whether an agreement to arbitrate exists; (2) whether an arbitrable claim is at issue and (3) whether there has been a waiver of the right to arbitration. 9 U.S.C. § 3. The party seeking to compel arbitration bears the burden of showing that the arbitration agreement exists and a stay is warranted. Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Company, Inc., 339 F.2d 440, 442 (2d Cir. 1964); Penalver v. Compagnie de Navigation Frutiere, Matouba, 428 F. Supp. 1070, 1072 (E.D.N.Y. 1977). **[*5]** This burden may be satisfied by the actual production of the arbitration agreement or by showing it was a regular practice of defendant to enter into these agreements. Fed. R. Evid. 406. When the party seeking to compel arbitration meets the initial requirement, the burden of proof shifts to the plaintiff to show a "substantial issue" concerning the presence of an agreement to arbitrate. Almacenes v. Fernandez, S.A. v. Golodetz, 148 F.2d 625, 628 (2d Cir. 1945).

The Standard Agreement is the contract consistently used by Centronics for all vice presidents of the company. Additionally, it is undisputed that the Standard Agreement contains an arbitration clause and that plaintiff received a copy. Because the arbitration clause specifically applies to disputes concerning whether an executive was terminated with cause, the claims here are plainly Jrbitrable under the Standard Agreement.

Although Centronics has waited over one year to move to compel arbitration, it has not waived its right to arbitrate. HN4 A delay in seeking arbitration does not constitute waiver of the right of arbitration, absent a showing of substantial prejudice by the party alleging waiver. Brener v. Becker Paribas, **[*6]** Inc., 628 F. Supp. 442, 451-52 (S.D.N.Y. 1985). Plaintiff has not suggested any harm resulted from the delay.

The dispute here concerns whether the Standard Agreement's arbitration clause bound the parties. It is axiomatic that HN5 a written provision is the sine qua non of an enforceable arbitration agreement. Fisser v. International Bank, 282 F.2d 231, 233 (2d Cir. 1960). A party need not sign an arbitration agreement to be bound if he commits himself to it by actions or conduct. American Broadcasting Companies, Inc. v. American Federation of Television and Radio Artists, 412 F. Supp. 1077, 1084 (S.D.N.Y. 1976). Because arbitration clauses are governed by ordinary contract principles, numerous kinds of conduct may evince an intent to be bound by the arbitration clause. Fisser, 282 F.2d at 233. For example, as here, a party may seek to enforce rights derived from other provisions of the agreement and thereby concede an intent to be bound by the entire agreement.

Plaintiff's contention that he is entitled to seek enforcement of those provisions of the Standard Agreement favorable to him while avoiding unfavorable provisions is untenable as it runs contrary to fairness **[*7]** and to common sense. HN6 While the Federal Rules of Civil Procedure countenance inconsistent and alternative pleading, see FRCP 8 (e)(2), they surely do not sanction the adoption of some terms of an agreement a party seeks to enforce and the jettison of others. Plaintiff has unequivocally recognized his intent to be bound by the Standard Agreement through his acceptance of defendant's job offer after receiving a copy of the Standard Agreement. Moreover, his suing under

Get a Document - by Citation - 1989 U.S. Dist. LEXIS 7317

Case 1:08-cv-03371-DAB   Document 14-3   Filed 06/23/2008   Page 5 of 5   Page 5 of 5

the Standard Agreement bespeaks his acknowledgment of the contract. Therefore, plaintiff must accept the consequences of his acceptance.

*CONCLUSION*

For the foregoing reasons, the Court grants the defendant's motion to compel arbitration pursuant to 9 U.S.C. § 1 et seq. as to both counts of the complaint.

This action is stayed pending arbitration and is ordered placed on this Court's suspense docket. The Court instructs the parties to submit a list of three proposed arbitrators each by July 10, 1989.

*SO ORDERED*

Dated: New York, New York June 22, 1989

Service:   **Get by LEXSEE®**
Citation:  **1989 U.S. Dist. LEXIS 7317**
View:      Full
Date/Time: Monday, June 23, 2008 - 3:16 PM EDT

\* Signal Legend:

● -   Warning: Negative treatment is indicated

Ⓠ -   Questioned: Validity questioned by citing refs

⚠ -   Caution: Possible negative treatment

◆ -   Positive treatment is indicated

Ⓐ -   Citing Refs. With Analysis Available

Ⓘ -   Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector

History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Out | Help

 LexisNexis®

About LexisNexis  |  Terms & Conditions  |  Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**LexisNexis®** *Total Research System*

Switch Client ┊ Preferences ┊ Sign Out ┊ ? Help

Search ▼ Research Tasks ▼ Get a Document ▼ *Shepard's®* ▼ Alerts ▼ Total Litigator ▼ Transactional Advisor ▼ Counsel Sele

Service: **Get by LEXSEE®**
Citation: **2006 U.S. Dist. LEXIS 52392**

*2006 U.S. Dist. LEXIS 52392, \**

ADOL OWEN-WILLIAMS, Plaintiff, v. BB&T INVESTMENT SERVICES, INC., Defendant.

Civil Action No. 06-0948 (CKK)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

2006 U.S. Dist. LEXIS 52392

July 31, 2006, Decided
July 31, 2006, Filed

**PRIOR HISTORY:** Owen-Williams v. Bb&T Inv. Servs., 2006 U.S. Dist. LEXIS 52400 (D.D.C., July 31, 2006)

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff job applicant filed suit against defendant prospective employer, alleging that the employer breached its employment contract with the applicant. The employer moved to compel arbitration under the Federal Arbitration Act (FAA) and to dismiss or stay proceedings, thereby asking the court to enforce the arbitration clause in its employment contract with the applicant.

**OVERVIEW:** The applicant signed an employment agreement and a covenants agreement, but the employer revoked its offer of employment due to some problems with the applicant's background check. The applicant's primary argument was that the arbitration clause was not enforceable because it was included in the covenants agreement and not the employment contract. The court held that the language of the arbitration clause was mutually binding on both parties because the employer also promised to resolve any disputes arising out of the agreement in arbitration. The court also held that the employment agreement was governed by the FAA because the applicant's job related to interstate commerce, as he would have been overseeing financial and securities transactions flowing across state lines. Thus, the FAA preempted contradictory Georgia law governing arbitration agreements. Finally, the employer had not waived its right to enforce the arbitration clause because the depositions noticed by the employer were directly related to the resolution of the applicant's request for a temporary restraining order and did not constitute an attempt by the employer to further the litigation.

**OUTCOME:** The court granted the employer's motion to enforce the arbitration agreement and dismissed the suit without prejudice.

**CORE TERMS:** arbitration, arbitration agreement, employment contract, arbitration clause, deposition, compel arbitration, waived, binding contract, arbitrate, binding, right to enforce, preempted, notice, employment relationship, right to arbitration, preliminary injunction, inconsistently, arbitrability, enforceable, discovery, right to arbitrate, interstate commerce, termination, litigating, actively, commerce, noticing, preempt, background check, evidentiary

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 52382

Case 1:08-cv-03377-LAB   Document 24-4   Filed 06/23/2008   Page 2 of 15   Page 2 of 15

hearings

## LEXISNEXIS® HEADNOTES                                        ⊟**Hide**

Contracts Law > Consideration > Mutual Obligation

Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

**HN1** Often, consideration for one party's promise to arbitrate is the other party's promise to do the same. More Like This Headnote

Contracts Law > Consideration > Mutual Obligation

Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

**HN2** Mutual agreements to arbitrate are independently sufficient forms of consideration. Under Georgia law, a promise is good consideration for another promise if there is an absolute mutuality of engagement, so that each party has the right at once to hold the other to a positive agreement. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Stays Pending Arbitration

**HN3** See 9 U.S.C.S. § 3.

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > General Overview

**HN4** The Federal Arbitration Act was enacted to overcome courts' refusals to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Coverage & Exceptions

Constitutional Law > Supremacy Clause > Federal Preemption

**HN5** The United States Supreme Court has concluded that in creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements. As such, any conflicting state law would violate the Supremacy Clause and be preempted by the Federal Arbitration Act. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Coverage & Exceptions

Constitutional Law > Supremacy Clause > Federal Preemption

**HN6** Georgia's tendency only to enforce arbitration agreements when they are limited to narrow issues such as damages conflicts with the Federal Arbitration Act (FAA), which places no such limitations on the enforceability of arbitration agreements. Georgia does not enforce broad arbitration agreements because the strong could oppress the weak, nullifying the law securing the enforcement of contracts that are usurious, illegal, immoral, or contrary to public policy. However, to hold that Georgia's policy preference to limit enforcement of arbitration agreements would lead to precisely the type of forum shopping the United States Supreme Court concluded Congress would not have intended when it passed the FAA, particularly given the original purpose of its passage was to combat the reluctance of courts to enforce arbitration agreements. The FAA is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural polices to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the act. Accordingly, any preference Georgia may have regarding the enforcement of arbitration agreements is preempted by the FAA. More Like This Headnote

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 52824    Filed 06/23/2008    Page 3 of 15

Case 1:08-cv-03317-LAB  Document 24    Filed 06/23/2008    Page 3 of 15

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Coverage & Exceptions 🔎
Constitutional Law > Supremacy Clause > Federal Preemption 🔎

**HN7** 🔎 When the Federal Arbitration Act (FAA) and governing state law conflict, the FAA, with its strong preference for the enforcement of arbitration agreements, governs.  More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Arbitration Agreements 🔎
Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Coverage & Exceptions 🔎
Constitutional Law > Congressional Duties & Powers > Commerce Clause > Interstate Commerce >
General Overview 🔎
Constitutional Law > Supremacy Clause > Federal Preemption 🔎

**HN8** 🔎 In order for the Federal Arbitration Act (FAA) to preempt Georgia law, the arbitration agreement at issue must be within the scope of the FAA. The FAA states that a written provision in a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C.S. § 2. The United States Supreme Court has clarified the meaning of the phrase "involving commerce," concluding that the word "involving," like "affecting," signals an intent to exercise Congress' commerce power to the full. Accordingly, the FAA will govern any contract that involves "commerce" to the extent constitutionally permitted by the Commerce Clause. Additionally, the Supreme Court has stated that the FAA may govern contracts in the employment context.  More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Arbitration Agreements 🔎
Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Coverage & Exceptions 🔎

**HN9** 🔎 If an agreement involves interstate commerce, the federal law applies to enforce its arbitration provision.  More Like This Headnote

Civil Procedure > Judicial Officers > Judges > Discretion 🔎
Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act >
Orders to Compel Arbitration 🔎

**HN10** 🔎 By its terms, the Federal Arbitration Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. 9 U.S.C.S. §§ 3, 4.  More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Waivers 🔎
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses 🔎

**HN11** 🔎 The right to arbitration, like any other contract right, can be waived. The question of whether there has been waiver in the arbitration agreement context should be analyzed in much the same way as in any other contractual context.  More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Coverage & Exceptions 🔎
Civil Procedure > Alternative Dispute Resolution > Arbitrations > Waivers 🔎
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses 🔎

**HN12** 🔎 A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right. Additionally, the Federal Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability. As such, questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.  More Like This Headnote

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 52024

Case 1:06-cv-03391-DAB Document 24-4     Filed 06/23/2008     Page 4 of 15  Page 4 of 15

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Waivers 🔍
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses 🔍
HN13⚓ Waiving one's right to seek arbitration via acting inconsistently with that right occurs through actively litigating or pursuing discovery of the substantive aspects of a case. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Waivers 🔍
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses 🔍
HN14⚓ When a party seeking arbitration has stated that intention in its answer, courts generally hold they have not acted inconsistently with their right to arbitrate the dispute. More Like This Headnote

Civil Procedure > Pleading & Practice > Motion Practice > Time Limitations 🔍
Civil Procedure > Pleading & Practice > Pleadings > Answers 🔍
HN15⚓ D.C. Super. Ct. R. Civ. P. 12, similar to the corresponding rule in the Federal Rules of Civil Procedure, is a procedural rule governing the timing of filing certain defenses. D.C. Super. Ct. R. Civ. P. 12(b). More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Arbitrability 🔍
HN16⚓ Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Stays Pending Arbitration 🔍
HN17⚓ The Federal Arbitration Act states that, when a district court deems arbitration is appropriate, the court shall stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. 9 U.S.C.S. § 3. However, when all of a plaintiff's claims must be submitted to arbitration dismissal is appropriate. More Like This Headnote

**COUNSEL:** [*1] For ADOL OWEN-WILLIAMS, Plaintiff: Seann Patrick Malloy, SIMMONS & ASSOCIATES, CHARTERED, Bethesda, MD US.

For BB&T INVESTMENTS SERVICES INC, Defendant: Alan Leonard Briggs ✔, SQUIRE, SANDERS & DEMPSEY, Washington, DC.

**JUDGES:** COLLEEN KOLLAR-KOTELLY, United States District Judge.

**OPINION BY:** COLLEEN KOLLAR-KOTELLY

**OPINION**

**MEMORANDUM OPINION**

Plaintiff Adol Owen-Williams ("Plaintiff") filed this action against Defendant BB&T Investment Services, Inc. ("Defendant" or "BB&T") in Superior Court of the District of Columbia on April 21, 2006, alleging Defendant breached its employment contract with Plaintiff. The case was removed to this Court on May 19, 2006. Presently before the Court is Defendant BB&T Investment Services, Inc.'s Motion to Compel Arbitration and Dismiss or Stay Proceedings ("Defendant's Motion to Compel"), in which Defendant asks the Court to enforce the arbitration clause in its employment

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 52392

Case 1:08-cv-03397-LDB   Document 24-4   Filed 06/23/2008   Page 5 of 15   Page 5 of 15

contract with Plaintiff. For the reasons set forth below, the Court shall grant Defendant's motion and dismiss without prejudice Plaintiff's present action.

## I. BACKGROUND

In January and February of 2006, Plaintiff was interviewed by phone and in person by one of Defendant's recruiters, **[*2]** T.J. Roccograndi, about a position with BB&T. Compl. at 4. Roccograndi decided he "wished to move forward with [Plaintiff]" and asked Plaintiff to fill out a standard industry background form. Def.'s Reply Mem. of BB&T Investment Services, Inc. in Support of Mot. to Compel Arbitration ("Def.'s Reply"), Ex. 2 (5/8/06 Hr'g Tr.) at 9:4-23; Pl.' Opp'n to Def.'s Mot. to Compel Arbitration and Stay Proceedings ("Pl.'s Opp'n") at 2 n. 2. At this time, Plaintiff told Roccograndi "he had to fill yes out to one of the questions [regarding involvement in prior litigation] because he said that he was involved in a litigation case with his neighbor …." Def.'s Reply, Ex. 2 (5/8/06 Hr'g Tr.) at 9:24-10:2. Plaintiff went on to explain the nature of that litigation and that "the judge …totally dismissed it." *Id*. at 10:3-25. Because the incident "had nothing to do with [Plaintiff's] business ethics," Roccograndi was satisfied with Plaintiff's explanation. *Id*. at 11:1-5. Following the interview, Roccograndi had the form faxed to BB&T's Compliance Department in Charlotte, North Carolina, so that a background check of Plaintiff could be conducted. *Id*. at 11:17-12:6. The Compliance **[*3]** Department told Roccograndi, based on Plaintiff's initial description of the incident, they wished to proceed in the hiring process, but that they would need Plaintiff to put that description in writing. *Id*. at 13:17-14:2.

Plaintiff was brought in for his final interview on March 21, 2006, and Plaintiff was offered the position via telephone the following day. *Id*. at 14:13-23, 46:13-23. On March 23, 2006, Defendant sent two documents to Plaintiff via Federal Express. Def.'s Reply, Ex. 3 (3/23/06 letter from Roccograndi to Pl. re: job offer ("Employment Contract")), (Protective Covenants Agreement ("Covenants Agreement")). ¹ Roccograndi testified that he sent the letter to Plaintiff communicating the employment offer, accompanied by the Protective Covenants Agreement. Def.'s Reply, Ex. 2 (5/8/06 Hr'g Tr.) at 17:13-18:2. Plaintiff testified that the Covenants Agreement was attached to the Employment Contract. *Id*. at 59:8-14.

### FOOTNOTES

¹ For the sake of clarity, the Court will employ Plaintiff's terms to distinguish between the letter extending Defendant's employment offer to Plaintiff ("Employment Contract") and the document attached to that letter providing the terms of employment ("Covenants Agreement"). However, as will be set forth fully below, the Court does not agree with Plaintiff's view that the Employment Contract alone, and not the Covenants Agreement, is the sole binding contract between Plaintiff and Defendant.

**[*4]** The Employment Contract stated that "[a]ll employment offers are contingent upon standard background checks …," and informed Plaintiff that his employment would begin April 10, 2006. Employment Contract. The Covenants Agreement contained the following arbitration clause:

> The parties agree that any and all disputes, disagreements, claims, or other conflicts regarding, relating to, or arising out of this Agreement, the Parties' employment relationship, any termination thereof, any employment-related act or practice by Employer or its employees, representatives, or agents, any breach of this Agreement, or any alleged breach of this Agreement, shall be subject and submitted to arbitration.

Covenants Agreement at 7. The Covenants Agreement also stated that the law of Georgia would govern the agreement. *Id*. at 6. Plaintiff signed both documents and returned them March 24, 2006, the day he received them. Def.'s Reply, Ex. 2 (5/8/06 Hr'g Tr.) at 47:6-7, 47:24-48:1; Covenants Agreement (signed and dated by Plaintiff 3/24/06).

Roccograndi informed Plaintiff he would need to provide a written record of the incident with his neighbor to ensure Compliance would approve **[*5]** Plaintiff's hiring. Def.'s Reply Ex. 2 (5/8/06 Hr'g Tr.) at 18:3-6. Roccograndi received Plaintiff's response to this request on March 28, 2006 and was "disappointed" and "shocked" because the letter communicated what Roccograndi considers "a totally different story from what [he] was initially told by [Plaintiff]" and because Roccograndi "put [his] name on the line" communicating Plaintiff's initial version of the story to the Compliance Department. *Id.* at 18:7-23. Roccograndi passed the letter on to Compliance, and, according to Roccograndi's testimony, various employees did not feel comfortable with proceeding with Plaintiff's hiring based on the contents of the letter. *Id.* at 19:1-20:2. The next day, Roccograndi was apprised of another incident in Plaintiff's past that Plaintiff did not disclose to Defendant. *Id.* at 19:1-20:2. The next day, Roccograndi was apprised of another incident in Plaintiff's past that Plaintiff did not disclose to Defendant. Id. at 20:3-9. While Plaintiff was in college, he was convicted of trespassing, a conviction that he has since had expunged from his record, and the National Association of Security Dealers sent that information to **[*6]** Defendant in error. Def.'s Reply, Ex. 1 (4/21/06 Hr'g Tr.) at 22:6-13. While Plaintiff and Defendant dispute the precise reason, BB&T eventually decided to rescind its employment offer based on Plaintiff's background check, and Roccograndi communicated this to Plaintiff on April 6, 2006, prior to the date Plaintiff and Defendant had agreed Plaintiff would begin his employment. Def.'s Reply, Ex. 2 (5/8/06 Hr'g Tr.) at 22:15-24, Ex. 1 (4/21/06 Hr'g Tr.) at 40:13-18. On April 11, 2006, Roccograndi and Plaintiff spoke again, and Roccograndi confirmed that the Compliance Department was not willing to approve Plaintiff for hiring. Def.'s Reply, Ex. 1 (4/18/06 Hr'g Tr.) at 41:22-42:1.

After unsuccessfully pursuing the matter further with Roccograndi, Plaintiff retained counsel in order to file the instant action in Superior Court of the District of Columbia. *Id.* at 54:25-55:9; 56:2-57:4. On April 21, 2006, the day the Complaint was filed, Plaintiff also filed an emergency motion for a temporary restraining order ("TRO") to prevent Defendant from filling Plaintiff's position at BB&T so that "maybe somebody with a reasonable mind [at BB&T] could take an objective look at [Plaintiff's] **[*7]** situation again." Def.'s Reply, Ex. 1 (4/21/06 Hr'g Tr.) at 87:8-15. That same day, the first of two evidentiary hearings on Plaintiff's requested TRO was held, in which Plaintiff sought to show he was entitled to injunctive relief. Def.'s Reply, Ex. 1 (4/21/06 Hr'g Tr.) at 82:25-16; 87:8-15. From the bench, Superior Court Judge Robert S. Tignor denied Plaintiff's motion, *id.* at 102:3-103:13, but three days later, Judge Tignor vacated his denial and issued an order permitting the parties to offer further evidence at an additional hearing, 4/24/06 Order. ² In preparation for that hearing, Defendant served notices of deposition and document requests on Plaintiff. Pl.'s Opp'n at 3. Defendant never held those depositions, Def.'s Reply at 13, though Plaintiff states he produced documents in response to Defendant's requests, Pl. Opp'n at 3. The second hearing was held on May 8, 2006, and the Superior Court again denied Plaintiff's motion. *See* Def.'s Reply, Ex. B (5/8/06 Hr'g Tr.); 5/8/06 Order.

### FOOTNOTES

2 Plaintiff incorrectly characterizes Judge Tignor's decision on April 21, 2006 as issuing "a temporary injunction preventing BB&T from filing Mr. Owen Williams [sic] position." Pl.'s Opp'n at 3. Instead, a review of the transcript indicates that Judge Tignor temporarily vacated his previous decision denying Plaintiff's requested relief pending further hearing. Ultimately, Judge Tignor denied Plaintiff's requested temporary restraining order for good on May 8, 2006.

**[*8]** The day of the second hearing, Defendant filed its first motion to compel arbitration, which the Superior Court denied because Defendant failed to comply with D.C. Superior Court Rule 12. Pl.'s Opp'n at 7 n. 8. On May 11, 2006, Defendant filed Defendant BB&T Investment Services, Inc.'s Answer and Affirmative Defenses ("Answer"), in which Defendant stated that "this matter should proceed in arbitration," and that in filing the Answer, Defendant did not intend to waive its right to seek enforcement of the arbitration agreement contained in the Covenants Agreement. Answer at 1.

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 52924

Case 1:08-cv-03397-LAB   Document 24-4   Filed 06/23/2008   Page 7 of 15   Page 7 of 15

On May 19, 2006, the action was removed by Defendant to this Court. *See* Defendant BB&T Investment Services, Inc.'s Notice of Removal. One week later, Defendant filed the motion presently before the Court, Defendant's Motion to Compel, in which Defendant seeks enforcement of the arbitration clause in the Covenants Agreement.

## II. DISCUSSION

Plaintiff argues that Defendant's Motion to Compel should be denied because the arbitration agreement was not supported by consideration and thus was not part of a binding contract; because Georgia law governs the terms of Plaintiff and Defendant's employment agreement, **[*9]** such that Georgia's policy preference against the enforcement of broad arbitration agreements dictates that the instant arbitration agreement is too broad to be enforced; and because, even if the arbitration agreement were valid and appropriate here, Defendant waived its right to enforce the agreement by acting inconsistently with an intention to arbitrate and actively litigating the action thus far. The Court will address each of Plaintiff's contentions in turn, concluding that the arbitration agreement is a binding contract supported by consideration, that the Federal Arbitration Agreement ("FAA") preempts Georgia law and governs the agreement, and that Defendant has not litigated the merits of this action and thus has not waived its right to enforce the arbitration agreement.

*A. The Covenants Agreement, Including the Arbitration Clause, Is a Binding Contract*

Plaintiff's primary argument is that the arbitration clause is not enforceable because it was included in the Covenants Agreement and not the Employment Contract. Pl.'s Opp'n at 4-5. According to Plaintiff, the Covenants Agreement was signed by Plaintiff subsequent to his entry into the Employment Contract, such that there **[*10]** was no additional consideration for the provisions of the Covenants Agreement. *Id.* Plaintiff avers that the terms of the Covenants Agreement are "purely one-sided" and thus, the Covenants agreement is not an enforceable contract, making all of its provisions, including the arbitration clause, unenforceable. *Id.* at 5. Plaintiff supports his contention that the Covenants Agreement is not a contract by quoting a provision that appears twice in the document:

> Employment-at-Will. Employee acknowledges and understands that nothing set forth in this agreement creates or is intended to (or is to be construed to) create any employment contract of any specified term between the parties. Rather, the parties agree that employee's employment is considered at will and may be terminated by either employee or employer at any time, for any reason, and with or without notice.

Covenants Agreement at 2; *see also* Covenants Agreement at 8.

It is wholly apparent to the Court that the provision that Plaintiff cites, not once in its entirety, is meant to distinguish between at-will employment, in which either party can terminate the employment relationship at any time, and an **[*11]** employment contract for a specified period of time. While the Court acknowledges Plaintiff's efforts to bring this clause to its attention, including quoting it three times, bolded and underlined, the Court would have appreciated Plaintiff quoting the full provision or including ellipses indicating any omitted material, particularly where, as here, the omitted language is material to the meaning of the sentence. *Compare* Pl.'s Opp'n at 6 n. 7 ("Nothing Set Forth In This Agreement Creates or is Intended to Create Any Employment Contract.") *and* Covenants Agreement at 2 ("Employment-at-Will: Employee acknowledges and understands that nothing set forth in this agreement creates or is intended to (or is to be construed to) create any employment contract of any specified term between the parties."). This provision is clearly not meant to state that the Covenants Agreement was not a binding employment contract, particularly given that the document also states: "for the above-referenced and other good and valuable consideration, the sufficiency of which is hereby acknowledged, and intending to be legally bound, the Parties voluntarily agree" to the terms set forth in the Covenants Agreement. **[*12]** *Id.* at 1.

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 52324

Case 1:08-cv-03397-LAB Document 24-4    Filed 06/23/2008    Page 8 of 15 Page 8 of 15

In an attempt to prove the Covenants Agreement was not a binding contract, Plaintiff argues: "[t]he March 23rd, 2006 Employment Contract constituted a binding employment contract with the Defendant. Later, after executing and returning the Employment Contract by mail, Plaintiff was presented with another document called the 'Protective Covenant Agreement.'" Pl.'s Opp'n at 6. As Defendant notes, the facts fail to support Plaintiff's assertion; rather, the Employment Contract and the Covenants Agreement were sent to Plaintiff together on March 23, 2006, received, signed, and returned by Plaintiff the following day. Def.'s Reply at 5, Ex. 2 (5/8/06 Hr'g Tr.) at 17:15-18:2, 59:8-14; Covenants Agreement. Plaintiff's assertion that he received the Covenants Agreement subsequent to his signing and returning the Employment Contract is contrary to his own testimony under oath, as well as the dates borne by both of the documents, which indicate they were returned to Defendant together. *See* Employment Contract (dated March 23, 2006 by Defendant); Covenants Agreement (dated March 24, 2006 by Plaintiff's signature). Plaintiff stated that he "signed and mailed the contract, **[*13]** " which was "multi-page" containing "several other pages attached to" the cover letter. Def.'s Reply, Ex. 1 (4/21/06 Hr'g Tr.) at 16:6-9. Based upon the signed and dated documents and Plaintiff's testimony, the Court concludes that the documents were, indeed, received, signed, and returned together. As such, Plaintiff's attempt to convince the Court that the Covenants Agreement is not a binding contract because it was signed by Plaintiff "later" than the Employment Contract fails because this assertion is contrary to the record before the Court.

Additionally, Plaintiff's attempt to urge the Court that the Covenants Agreement is not a binding contract fails because his assertion that the agreement was one-sided and lacking consideration is without merit. The document states: "this Agreement [is] ancillary to, an integral term and condition of and in consideration for such employment with Employer …." Covenants Agreement at 4. Many of its terms are explicitly mutual, such as the frequently cited At-Will provision, which states that "employee's employment is considered at will and may be terminated by *either employee or employer* at any time …." Covenant Agreement at 2 (emphasis **[*14]** added).

Specifically with regard to the mutuality of the arbitration clause, Plaintiff argues that the present case is similar to *Gibson v. Neighborhood Health Clinics, Inc.*, in which the Seventh Circuit held that an arbitration clause in the plaintiff employee's policy manual was not binding on the plaintiff because the agreement lacked consideration. 121 F.3d 1126, 1131 (7th Cir. 1997). However, that holding turned on the fact that the agreement was "worded entirely in terms of [the plaintiff's] obligation to submit his claims to arbitration (using phrases such as "I agree" "I understand" "I am waiving"); it contains no promise on [the defendant's] part." *Id.* In fact, the court in *Gibson* explicitly stated, *HN1*"[o]ften, consideration for one party's promise to arbitrate is the other party's promise to do the same," but in that particular agreement, no such return promise from the employer existed. *Id.* (citing *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 835 (8th Cir. 1997); *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 869 (7th Cir. 1985)).

Unlike in *Gibson*, the language of the arbitration clause in the instant **[*15]** case is mutually binding on both Plaintiff and Defendant. It states:

> The Parties agree that any and all disputes, disagreements, claims, or other conflicts regarding, relating to, or arising out of this Agreement, the Parties' employment relationship, any termination thereof, any employment-related act or practice by Employer or its employees, representatives, or agents, any breach of this Agreement, or any alleged breach of this Agreement, shall be subject and submitted to binding arbitration.

Covenants Agreement at 7. *HN2*"Mutual agreements to arbitrate are independently sufficient forms of consideration." *Sapiro v. VeriSign*, 310 F. Supp. 2d 208, 214 (D.D.C. 2004) (citing *Morrison v.*

*Circuit City Stores, Inc.*, 317 F.3d 646, 667 (6th Cir. 2003)). *See also Rushing v. Gold Kist, Inc.*, 256 Ga. App. 115, 119, 567 S.E. 2d 384 (2002) ("[U] under Georgia law, a promise is good consideration for another promise if there is an absolute mutuality of engagement, so that each party has the right at once to hold the other to a positive agreement. ...[Defendant cooperative] and its members are equally bound to arbitrate those **[*16]** categories of cases designated by the board, to comply with the same arbitration procedures, and to abide by the results.").

Therefore, Plaintiff's argument that the arbitration agreement, as part of the Covenants Agreement, is not enforceable because it lacks consideration, is without merit. While Plaintiff's own testimony directly contradicts Plaintiff's statements in his Opposition regarding the timing of his receipt of the Employment Contract and Covenants Agreement, even if Plaintiff did not receive the Covenants Agreement until a later date, the arbitration clause was nonetheless supported by consideration. Defendant's mutual and equivalent promise to resolve any disputes arising out of the agreement in arbitration suffices as consideration for Plaintiff's promise to do the same. The Court concludes that the Covenants Agreement, and specifically, the arbitration clause, is a binding and enforceable contract supported by consideration.

*B. The Federal Arbitration Act Governs this Contract*

1. Georgia Law is Preempted by the Federal Arbitration Act

Plaintiff attempts to avoid arbitration by arguing that, even if the Covenants Agreement is a binding contract, according **[*17]** to the Governing Law provision, Georgia law governs all disputes relating to the contract. Pl.'s Opp'n at 8. Plaintiff notes Georgia's tendency to only enforce an arbitration contract if it "limits its applicability to questions such as the amount of loss or damage and requires arbitration as a condition precedent to a right of action upon the contract itself." *Id*. (citing *Freeman v. C.W. Redfern Enter., Inc.*, 182 Ga. App. 205, 206, 355 S.E.2d 79 (1987) (quoting *Savannah Transit Auth. v. Ledford*, 179 Ga. App. 238, 238, 345 S.E.2d 915 (1986))). [3] The arbitration clause in the Covenants Agreement is broad in that it applies to all aspects of disputes arising out of the employment relationship between Plaintiff and Defendant. *See* Covenants Agreement at 7. According to Plaintiff, the arbitration clause is not "narrowly limited as required by Georgia law. ...[such that] the arbitration clause of the contract should not be enforced and arbitration should not be compelled." Pl.'s Opp'n at 9.

**FOOTNOTES**

[3] Notwithstanding the fact that Georgia law is preempted by the FAA, the Court notes that in 1988, one year after *Freeman*, which Plaintiff cites to illustrate Georgia's policy on arbitration, Georgia's "General Assembly extensively revised the statutory provisions governing arbitration .... The stated intention ...was to extend the enforcement of arbitration construction contracts [only, as had formerly been the case] to all contracts in which the parties have agreed to arbitration in writing." *Weyant v. MacIntyre*, 211 Ga. App. 281, 282, 438 S.E.2d 640 (1993) (internal citations omitted). As such, even if Georgia law were not preempted by the FAA, *Freeman* and other pre-1988 Georgia cases would not govern the arbitrability of this action.

**[*18]**  The FAA states:

> *HN3* If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ....

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 52392    Filed 06/23/2008    Page 10 of 15    Page 10 of 15

Case 1:08-cv-03379-DAB    Document 14-4    Filed 06/23/2008

9 U.S.C. § 3. HN4⚓The FAA was enacted "to overcome courts' refusals to enforce agreements to arbitrate" and to "place such agreements upon the same footing as other contracts." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995) (internal citations and quotation marks omitted).

In *Southland Corp. v. Keating*, HN5⚓the Supreme Court concluded that "[i]n creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." 465 U.S. 1, 16, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984). **[*19]** As such, any conflicting state law would violate the Supremacy Clause and be preempted by the FAA. *Id.* at 15-16, 104 S. Ct. 852; *see also Allied-Bruce*, 513 U.S. at 272, 115 S. Ct. 834 (declining to reconsider its decision in *Southland* that the FAA preempts inconsistent state arbitration laws).

The Georgia Court of Appeals has addressed the impact of *Southland* when the party opposing enforcement of the arbitration clause sought to have the Georgia Arbitration Act govern the dispute. The court stated, "we must conclude that 'the state law and policy ...must yield to the paramount federal law.'" *Primerica Fin. Servs., Inc. v. Wise*, 217 Ga. App. 36, 41, 456 S.E.2d 631 (1995) (quoting *CCC Builders v. City Council of Augusta*, 237 Ga. 589, 592, 229 S.E.2d 349 (1976)). While the Georgia Arbitration Act would have rendered the arbitration clause in *Primerica* unenforceable, the FAA preempted Georgia's law and the Court of Appeals affirmed the district court's enforcement of the arbitration clause. *Id.*

Plaintiff's argument in the instant case fails for the same reasons. While Plaintiff argues that the arbitration **[*20]** agreement is governed according to HN6⚓Georgia's tendency only to enforce arbitration agreements when they are limited to narrow issues such as damages, this tendency conflicts with the FAA, which places no such limitations on the enforceability of arbitration agreements. Georgia does not enforce broad arbitration agreements because "the strong could oppress the weak, ... nullify[ing] the law ...secur[ing] the enforcement of contracts [that are] usurious, illegal, immoral, or contrary to public policy, *Freeman*, 182 Ga. App. 205, 355 S. Ed. 2d 79, at 81 (quoting *Parsons v. Ambos*, 121 Ga. 98, 48 S.E. 696 (1904)). However, to hold that Georgia's policy preference to limit enforcement of arbitration agreements would lead to precisely the type of forum shopping the Supreme Court concluded Congress would not have intended when it passed the FAA, particularly given the original purpose of its passage was to combat the reluctance of courts to enforce arbitration agreements. *Southland*, 465 U.S. at 15, 104 S. Ct. 852.

The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state **[*21]** substantive or procedural polices to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. at 927, 74 L. Ed. 2d 765 (1983). Accordingly, any preference Georgia may have regarding the enforcement of arbitration agreements is preempted by the FAA. HN7⚓When the FAA and governing state law conflict, the FAA, with its strong preference for the enforcement of arbitration agreements, governs.

2. laintiff and Defendant's Arbitration Agreement is within the Scope of the Federal Arbitration Act

HN8⚓In order for the FAA to preempt Georgia law in governing the instant arbitration agreement, the agreement itself must be within the scope of the FAA. The FAA states, "A written provision in . ..a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ...shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 **[*22]** . The Supreme Court has clarified the meaning of the phrase "involving commerce," concluding that "the word 'involving,' like 'affecting,' signals an intent to exercise Congress' commerce power to the full." *Allied-Bruce*, 513 U.S. at 277, 115 S. Ct. 834. Accordingly, the FAA will govern any contract that involves "commerce" to the extent constitutionally permitted by the

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 52392

Case 1:08-cv-03379-DAB    Document 24-4    Filed 06/23/2008    Page 11 of 15    Page 11 of 15

Commerce Clause. Additionally, the Supreme Court has stated that the FAA may govern contracts in the employment context. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001).

It is clear that Plaintiff and Defendant's employment agreement is governed by the FAA. As Defendant argues, "Plaintiff's employment would have required that he negotiate and oversee financial transactions related to securities sales arising in various states and direct funds flowing across state lines." Def.'s Mot. to Compel at 6. Plaintiff does not rebut this characterization of his employment, nor does he dispute Defendant's assertion that his employment would have involved interstate commerce. *See generally* Pl.'s Opp'n. Accordingly, the Court concludes that Plaintiff **[*23]** and Defendant's employment contract involved interstate commerce within the meaning of the FAA and therefore, the FAA preempts Georgia law governing arbitration agreements. *See Columbus Anesthesia Group, P.C. v. Kutzner*, 218 Ga. App. 51, 52, 459 S.E.2d 422 (1995) (acknowledging *HN9* "[i]f the agreement involves interstate commerce, the federal law applies to enforce its arbitration provision") (citing *Southland*, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1).

*HN10* "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3, 4). Plaintiff and Defendant's arbitration agreement is clearly within the statute: there is a written arbitration provision in the Covenants Agreement, which the court has already determined is a binding contract supported by consideration, and that contract **[*24]** involves interstate commerce. Accordingly, the Court must direct the parties to arbitration.

*C. Defendant Has Not Waived its Right to Enforce the Arbitration Clause*

Plaintiff's final argument against compelling arbitration is that, even if the arbitration agreement is part of a binding contract and governed by the FAA, Defendant has waived its right to enforce that provision by actively litigating the case since its inception. Pl.'s Opp'n at 7. *HN11* "The right to arbitration, like any other contract right, can be waived." *Cornell & Co. v. Barber & Ross Co.*, 123 U.S. App. D.C. 378, 360 F.2d 512, 513 (D.C. Cir. 1966). "[T]he question of whether there has been waiver in the arbitration agreement context should be analyzed in much the same way as in any other contractual context." *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 261 U.S. App. D.C. 284, 821 F.2d 772, 774 (D.C. Cir.).

*HN12* "A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right." *Cornell*, 360 F.2d at 513; *see also McCormick-Morgan, Inc. v. Whitehead Elec. Co.*, 179 Ga. App. 10, 12, 345 S.E.2d 53 (1986) **[*25]** ("An agreement to arbitrate is waived by any action of a party which is inconsistent with the right of arbitration."). Additionally, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Cone*, 460 U.S. at 24-25, 103 S. Ct. 927. As such, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id*.

Plaintiff avers that Defendant waived its right to enforce the arbitration because it "waited over one month to seek to enforce the arbitration clause ….[T]he parties have participated in two full-blown evidentiary hearings, under oath; extensive discovery including: serving document requests on plaintiff to which Plaintiff responded; serving a subpoena upon, and noticing the Deposition of [Plaintiff's former neighbor]; noticing the Deposition of [Plaintiff]; serving a subpoena upon, and noticing the Deposition of [Plaintiff's former employer]; **[*26]** and filing an Answer." Pl.'s Opp'n at 7. Plaintiff also notes that Defendant's initial motion to compel arbitration, filed on May 8, 2006 in Superior Court prior to the action's removal to this Court, was denied, and that Defendant subsequently "continued to subpoena witnesses for depositions after this date. As such, the effective

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 52392

Case 1:08-cv-03370-DAB   Document 44-4   Filed 06/23/2008   Page 12 of 15   Page 12 of 15

date that Defendants attempted to invoke the arbitration clause is May 26, 2006," the date Defendant's current motion was filed with this Court. *Id.* at 7 n. 8.

As Defendant correctly notes, the "full-blown evidentiary hearings" were regarding Plaintiff's motion seeking the Superior Court to enjoin Defendant from filling Plaintiff's position while Plaintiff continued to seek reinstatement of his employment contract. Def.'s Reply at 11-12, Ex. 1 (4/21/06 Hr'g Tr.) at 85:19-86:14. In fact, Plaintiff's Complaint and request for TRO were filed on April 21, 2006, and the first hearing regarding the TRO was held that same day. Def.'s Reply at 11-12. The second evidentiary hearing was held May 8, 2006, when the Superior Court asked to hear further argument on Plaintiff's request for TRO. *Id.*, Ex. 2 (5/8/06 Hr'g Tr.); 4/24/06 Order. Defendant **[*27]** states that each notice of deposition "was in defense of those very same emergency hearings. [Defendant] cancelled all three depositions when it became apparent the depositions could not take place prior to the May 8 hearing on the TRO." Def.'s Reply at 13.

Defendant argues that this Court should follow *Popovich v. McDonald's Corp.*, where the court concluded the defendant "did not waive its right to arbitrate by opposing [the plaintiff's] motion for a preliminary injunction." 189 F. Supp. 2d 772, 775 (N.D. Ill. 2002). There, the plaintiff filed his motion for preliminary injunction one week after filing suit, the court denied the motion two weeks later, and a month after that denial, the defendant filed its motion to compel arbitration. *Id.* at 774. The court acknowledged that the defendant could have sought enforcement of the arbitration clause during the preliminary injunction proceedings, but "a demand for arbitration would not have precluded the Court from considering the preliminary injunction motion. Even when a claim filed in court is subject to arbitration, a court retains the authority to enter a preliminary injunction to preserve the **[*28]** *status quo ante* and prevent irreparable harm pending a decision by the arbitration panel. ...Thus, [defendant's] opposition to [plaintiff's] motion was in no way inconsistent with the right to arbitrate and does not constitute a waiver." *Id.* at 775-76 (internal citations omitted).

*Popovich* is consistent with the widely held view that *HN13* waiving one's right to seek arbitration via acting inconsistently with that right occurs through actively litigating or pursuing discovery of the substantive aspects of a case. *See, e.g., A.G. Edwards*, 821 F.2d at 776 (finding that the defendant "chose to have the substance of [plaintiff's] arbitrable claims decided by a court. This election was wholly inconsistent with an intent to arbitrate and constituted an abandonment of a right to seek arbitration."). The court in *A.G. Edwards* explained that to let the defendant arbitrate substantive issues that had already been litigated before the court would violate the "policy that arbitration may not be used as a strategy to manipulate the legal process." *Id.* There, the party seeking arbitration had engaged in discovery, noticing and taking depositions, **[*29]** and requesting and receiving documents. *Id.* at 775. Similarly, in *Burnham v. Cooney*, the Georgia Court of Appeals affirmed the trial court's finding that the defendant had waived his right to arbitration when he "pled to the merits of the case, responded to discovery, and obtained a transfer of the case ...." 265 Ga. App. 246, 247, 593 S.E.2d 701 (2004). Unlike here, in *A.G. Edwards* and *Burnham*, those depositions were directed at the substantive issues of each case. *Id.*

In the instant case, no depositions were actually taken, and those noticed were directly related to the resolution of Plaintiff's request for a TRO. Def.'s Reply at 13. The fact that those depositions were only noticed for the purposes of the TRO hearing and not to begin litigating the merits of the case is substantiated by Defendant cancelling those depositions "when it became apparent the depositions could not take place prior to the May 8 hearing on the TRO." [4] Def.'s Reply at 13. Regarding the documents Defendant requested and received from Plaintiff, the timing of the proceedings suggests those documents were exchanged in anticipation of the TRO hearing. Requesting documents **[*30]** in an attempt to defend itself from a TRO should not be viewed as an abdication of Defendant's right to seek enforcement of the arbitration agreement. Defendant stated its intention to enforce the arbitration agreement less than one month after receiving Plaintiff's Complaint, first in its May 8, 2006 Motion to Compel Arbitration and Stay Proceedings, and then again in its May 11, 2006 Answer. When Defendant first stated that intention, the hearings regarding Plaintiff's request for TRO were still ongoing.

## FOOTNOTES

**4** Plaintiff alleges that "Defendant continued to subpoena witnesses for deposition after" its initial motion to compel arbitration was filed and denied. Pl.'s Opp'n at 7 n. 8. Accordingly, Plaintiff contends that the Court should conclude "the effective date that Defendants attempted to invoke the arbitration clause is May 26, 2006," the day Defendant filed its instant Motion to Compel, because up until that date, Defendant was acting inconsistently with its arbitrate. *Id.* However, the Superior Court's docket contains no notices of deposition after Defendant's May 8, 2006 motion seeking enforcement of the arbitration agreement, and the only notices of deposition were filed on April 26, 2006. As such, the Court cannot agree with Plaintiff's statement regarding the "effective date" on which Defendant sought to enforce the arbitration agreement.

**[\*31]** Additionally, *HN14*⚓when a party seeking arbitration has stated that intention in its answer, courts generally hold they have not acted inconsistently with their right to arbitrate the dispute. *See, e.g., Freeman, 182 Ga. App. at 206,* 355 S. Ed. 2d 79 ("[Defendant] raised arbitration as a defense when it filed its answer ....[T]here is no evidence that it took any action inconsistent with its assertion that arbitration was the proper disposition of the controversy."); *Weyant, 211 Ga. App. at 283-84, 438 S.Ed.2d 640* (affirming the trial court's decision to compel arbitration where the defendant "asserted the arbitration clause in his answer and promptly moved to compel arbitration ....").

Plaintiff argues that the "effective date that Defendants attempted to invoke the arbitration clause is May 26, 2006," the date Defendant filed its Motion to Compel with this Court because, prior to removal, Superior Court denied Defendant's May 8, 2006 motion seeking enforcement of the arbitration clause pursuant to the Superior Court Rules of Civil Procedure, Rule 12. Pl.'s Opp'n at 7 n. 8. *HN15*⚓Rule 12, similar to the corresponding rule in the Federal Rules of **[\*32]** Civil Procedure, is a procedural rule governing the timing of filing certain defenses. D.C. Sup. Ct. R. 12(b). The Superior Court's denial of Defendant's motion was procedural and did not reflect a judgment on the merits of Defendant's right to seek arbitration. In fact, the Court notes that the *sua sponte* denial occurred before Plaintiff even filed an opposition to Defendant's motion. Additionally, prior to the May 26, 2006 filing of its Motion to Compel, Defendant asserted its right to arbitration on May 11, 2006, in its Answer listing arbitration as one of its defenses. Answer at 7-8.

Because the standard governing waiver is that the party seeking to enforce the arbitration clause has acted inconsistently with an intention to arbitrate, the Court must conclude that Defendant has not waived its rights, particularly given the Supreme Court's urging that *HN16*⚓"questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Cone, 460 U.S. at 24-25, 103 S. Ct. 927.* Defendant's initial procedural error in filing its arbitration defense prior to filing its Answer does not detract from Defendant's express intention to assert **[\*33]** its right to arbitration less than one month after Plaintiff served its Complaint. Taken together, the history of this litigation results in the necessary conclusion that Defendant has not waived its right to enforce the arbitration agreement. Defendant has acted consistently with its intention to pursue enforcement of the clause. Defendant initially responded to Plaintiff's emergency TRO motion, has not engaged in litigation as to the merits of this case, and stated its intention to pursue arbitration less than one month into this action in Defendant's Answer, expressly noting that in answering Plaintiff's Complaint, Defendant was not waiving its right to arbitration. Answer at 1, 7-8. Accordingly, Plaintiff's argument that Defendant waived its right to enforce the arbitration agreement fails, and this Court will compel arbitration.

*D. Dismissal is Appropriate Because all of the Issues Will Be Arbitrated*

*HN17*⚓The FAA states that, when a district court deems arbitration is appropriate, the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 52392

Case 1:08-cv-03371-DAB   Document 14-4   Filed 06/23/2008   Page 14 of 15   Page 14 of 15

agreement ...." 9 U.S.C. § 3. However, when "all of plaintiff's **[*34]** claims must be submitted to arbitration" dismissal is appropriate. _Nelson v. Insignia/ESG, Inc._, 215 F. Supp. 2d 143, 158 (D.D.C. 2002); _see also Alford v. Dean Witter Reynolds, Inc._, 975 F.2d 1161, 1164 (5th Cir. 1992) ("[t]he weight of the authority clearly supports dismissals of the case when all of the issues raised in the district court must be submitted to arbitration").

Plaintiff and Defendant's arbitration agreement states:

> The Parties agree that any and all disputes, disagreements, claims, or other conflicts regarding, relating to, or arising out of this Agreement, the Parties' employment relationship, any termination thereof, any employment-related act or practice by Employer or its employees, representatives, or agents, any breach of this Agreement, or any alleged breach of this Agreement, shall be subject and submitted to binding arbitration.

Covenants Agreement at 7. Plaintiff's Complaint alleges breach of contract and detrimental reliance, seeking relief either through Defendant re-hiring Plaintiff or, in the alternative, damages being awarded to Plaintiff to compensate for his detrimental reliance. Compl. at 8-9, 11. **[*35]** The thrust of Plaintiff's action is that Defendant breached a binding employment contract by terminating Plaintiff's employment. _Id._ Defendant, on the other hand, avers that the employment agreement was expressly contingent upon background checks, such that Defendant was not in breach when it decided it did not want to hire Plaintiff upon discoveries Defendant made about Plaintiff's past, or, in the alternative, that Defendant did not breach the contract because Plaintiff's employment was at-will. Answer at 5-7.

Given the breadth of the arbitration agreement and the fact that Plaintiff and Defendant's dispute falls squarely within the language of the agreement, referring to termination and breach, it is apparent that all of the issues in this action are subject to arbitration. As such, the appropriate remedy is dismissal of Plaintiff's action.

## III. CONCLUSION

For the reasons set forth above in this Memorandum Opinion, the Court shall grant Defendant's motion to enforce the arbitration agreement and dismiss this action without prejudice. An appropriate Order accompanies this Memorandum Opinion.

Date: July 31, 2006

/s/ COLLEEN KOLLAR-KOTELLY

United States District **[*36]** Judge

Service: **Get by LEXSEE®**
Citation: **2006 U.S. Dist. LEXIS 52392**
View: Full
Date/Time: Monday, June 23, 2008 - 3:17 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
🔲 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 52292

Case 1:08-cv-03371-DAB   Document 14-4   Filed 06/23/2008   Page 15 of 15   Page 15 of 15

\* Click on any *Shepard's* signal to *Shepardize*® that case.

Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Out | Help

 LexisNexis·

About LexisNexis  | Terms & Conditions  | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.